■ NBT BANCORP, INC., et al., Appellants, v FLEET/NORSTAR FINANCIAL GROUP, INC., et al., Respondents. [628 NYS2d 408] —Mikoll, J. P. Appeal from an order of the Supreme Court (Coutant, J.), entered August 8, 1994 in Chenango County, which granted defendants' motion for summary judgment dismissing the complaint.

This matter was previously before this Court wherein we affirmed Supreme Court's dismissal of plaintiffs' complaint against defendants* except as to a cause of action for tortious interference with prospective business relations (159 AD2d 902, appeal dismissed 76 NY2d 886, lv dismissed 76 NY2d 982). We are now presented with Supreme Court's grant of summary judgment dismissing the remaining cause of action for tortious interference with business relations, from which plaintiffs appeal. Supreme Court found that plaintiff NBT Bancorp Inc. (hereinafter NBT) failed to demonstrate the existence of a triable issue of fact as to whether defendants used "wrongful means" to interfere with an attempted merger between NBT and Central National Bank (hereinafter Central) or, even if any wrongful means were used, that such means caused the stockholders to repudiate the merger. The court found that the actions of dissenting director Herbert Kling were a superseding cause of the termination of the merger.

To successfully oppose a motion for summary judgment on a cause of action for tortious interference with prospective business relations, plaintiffs must establish that defendants engaged in the use of wrongful or unlawful means to secure a competitive advantage over plaintiffs, or that defendants acted for the sole purpose of inflicting intentional harm on plaintiffs (see, e.g., Guard-Life Corp. v Parker Hardware Mfg. Corp., 50

---

* The activities of which plaintiffs complain herein were undertaken by Norstar Bancorp, Inc. and defendant Norstar Bank of Upstate New York. These entities are collectively referred to as Norstar. Norstar Bancorp, Inc. has since merged with Fleet Financial Group, Inc. to form defendant Fleet/Norstar Financial Group, Inc.

NY2d 183, 190-191, 196; *Datlow v Paleta Intl. Corp.,* 199 AD2d 362, 363).

Prefatorily, we note that plaintiffs' complaint asserts that the wrongful acts of defendants were carried out for the purpose of securing an economic advantage over plaintiffs in competing for the acquisition of Central. As an economic purpose is lawful *(see, e.g., Slifer-Weickel, Inc. v Meteor Skelly,* 140 AD2d 320, 322), defendants urge that this allegation constitutes a judicial admission that defendants' alleged wrongful acts were carried out for a legitimate purpose *(see, e.g., Matter of Willard v Haab,* 170 AD2d 820, 821, *lv denied* 78 NY2d 854) and, therefore, plaintiffs' argument against the grant of summary judgment is limited to whether defendants' activities satisfy the "wrongful means" prong of the test for tortious interference with prospective business relations. We concur with this contention. Wrongful means is defined as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" *(Guard-Life Corp. v Parker Hardware Mfg. Corp., supra,* at 191).

The issue for resolution before us is whether plaintiffs established that a question of fact exists as to whether defendants engaged in wrongful means to abort the merger. The wrongful acts plaintiffs ascribe to defendants are two-fold. First, they contend that defendants dumped NBT stock in large numbers on the stock market, in their street name, to adversely and artificially affect the stock price for NBT stock, with the nefarious intent of dissuading Central's directors and shareholders from the merger. To prevail on this contention, plaintiffs need to establish that defendants engaged in an attempt to manipulate the market or to misrepresent the value of NBT stock in transferring their holding to its "street name" prior to the stock sale. Manipulation under the securities laws cannot be found unless there is misrepresentation or nondisclosure *(Schreiber v Burlington N.,* 472 US 1, 12). Unlawful manipulation occurs where the appearance of transactions is created artificially as by "wash sales" or "matched orders" *(see, Santa Fe Indus. v Green,* 430 US 462, 476-477).

The instant sale was made in two block sales, several weeks apart. It was a bona fide sale, fully disclosed, and made on the open market in Norstar's street name to NBT's lead market maker for the highest price offered. Plaintiffs were fully aware of the sale. The transaction had no negative effect on the market price of NBT stock which was thereafter resold by First Albany Corporation at a profit, and despite the stock

sale, plaintiffs' merger offer was nonetheless accepted by NBT's directors. We find that the record does not establish either manipulation or nondisclosure. The contention of stock manipulation fails for lack of any evidentiary support in the record.

The second wrongful means plaintiffs attempt to establish to support their cause of action is based on a letter sent to David Nolan, Central's chief executive officer, and to other members of Central's Board of Directors by Robert Macfarland, president of defendant Norstar Bank of Upstate New York. The letter is dated December 1, 1986. Plaintiffs contend that its substance constitutes an illegal attempt to affect the proxy vote in violation of Federal securities law. The argument is that, by its criticism of Central directors that they had overvalued NBT's offer to purchase Central by ascribing a 10% higher value to NBT stock than its current market value, defendants' letter attempted to affect the outcome of the fight for proxies.

We note from the record that the letter was sent some five months before any proxy war erupted. It was not directed to shareholders. The letter was acknowledged by Nolan to be an expression of pique on Macfarland's part in the rejection of Norstar's bid to buy Central. As such, it bore no malevolent purpose. Nothing has been submitted by plaintiffs to show that, when written, defendants could foresee the future actions of Kling, one of the dissenting directors, who ultimately released the letter's contents to the press. Nor is there proof that defendants intended that the letter would be used by Kling to influence the outcome of any proxy war. The letter was a communication of defendants' honestly held position as to Central's proposed merger with NBT. The letter bears no inaccuracies. Macfarland's critical opinion as to stock overvaluation are an expression of opinion about NBT's stock price and does not constitute actionable misrepresentation.

Plaintiffs also argue that the December 1986 letter misrepresents Macfarland's alleged knowledge that plaintiffs were given an exclusive opportunity to revise their bid. Plaintiffs claim that Macfarland lied in the letter by complaining that Norstar had not been advised in advance of the Central Board's majority vote to allow NBT to bid again. The record fails entirely to support the contention that Macfarland held such knowledge and, in any event, we fail to perceive its significance in affecting the proxy vote. There was nothing presented by plaintiffs to indicate that Macfarland had prior knowledge of plaintiffs' right to make an amended bid when

the letter was written. Plaintiffs' assertion that defendants could be imputed with such prior knowledge because unnamed persons opposed to the merger periodically provided information to defendants is entirely speculative.

With regard to plaintiffs' claims that defendants persuaded Kling to oppose the merger, Kling himself indicated that defendants were not instrumental in his decision to oppose the merger and that he had concluded himself that such a merger was not to the Central stockholders' benefit. He also testified that he received no assistance from defendants in his active opposition to the merger.

Finally, plaintiffs' contention that Norstar's May 29, 1987 letter (noting its willingness to make a new offer in competition with NBT's revised bid) was for the intended purpose of spoiling NBT's merger agreement, and not for any legitimate competitive purpose, is belied by NBT's admission in its complaint that defendants' acts were done to secure an economic advantage, not solely to injure plaintiffs. This admission disposes of the claim of malice *(see, e.g., Dalton v Union Bank,* 134 AD2d 174, 177).

Having failed to establish its allegations of tortious interference with prospective business relations, summary judgment dismissing the complaint was appropriately granted by Supreme Court.

Crew III, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, with costs.