■ BANNA R. JABBOUR, Respondent, v ALBANY MEDICAL CENTER et al., Appellants. [654 NYS2d 862] —Cardona, P. J. Appeal from that part of an order of the Supreme Court (Ceresia, Jr., J.), entered June 17, 1996 in Albany County, which partially denied defendants' motion for summary judgment dismissing the complaint.

In May 1991, plaintiff, a graduate of Albany Medical College, signed an employment agreement with defendant Albany Medical Center (hereinafter AMC) to work on its house staff as a resident in the Department of Neurology for the period July 1, 1991 to June 30, 1992, under the supervision of defendant Neil S. Lava, the head of the Neurology Residency Program.[1] In January 1992, plaintiff was informed by Kevin Barron, the Chair of AMC's Neurology Department, that he was not going to receive credit for the year nor would his residency be renewed after June 30, 1992. Plaintiff applied for placement in the Family Practice Residency Program at St. Clare's Hospital in the City of Schenectady, Schenectady County, and, by letter dated April 16, 1992, was notified that an opening was available for him in that program.

Subsequently, an incident occurred on April 22, 1992,

---

1. The employment contract provided, as is relevant here, that plaintiff's appointment as a member of house staff was subject to AMC's bylaws and that plaintiff "may be terminated by [AMC] in accordance with its [bylaws] or for breach of the terms of the [employment contract] by the Resident/Fellow". The bylaws provided that AMC's Medical Board could, on its own initiative or after receipt of written charges from a Chief of Service, suspend or revoke the house staff membership of any employee for "good cause".

whereby plaintiff was accused of conducting an inappropriate physical examination of a 15-year-old female patient. According to Lava, he immediately suspended plaintiff and, a few days after the incident, called St. Clare's Family Practice Residency Program and relayed that "plaintiff had been terminated" from the Neurology Department at AMC. On April 28, 1992, plaintiff was formally notified that he was being terminated and was entitled to a hearing. By letter dated May 1, 1992, Duke Dufresne, Director of the Family Practice Residency Program at St. Clare's, informed plaintiff that he was aware of his termination under circumstances which, if accurate, would render him ineligible for employment at St. Clare's. Dufresne requested that plaintiff contact him to explain the situation. A hearing on the charge was held on May 20, 1992 and June 1, 1992, after which the Hearing Committee sustained the charge and recommended to the Medical Board that plaintiff be terminated. The Medical Board adopted the recommendation of the Hearing Committee and the AMC Board of Governors subsequently approved the recommendation to terminate plaintiff effective April 22, 1992.

Plaintiff was apparently not accepted into another residency program for the period between July 1, 1992 and June 30, 1993, and he thereafter commenced this action for damages alleging four causes of action: (1) breach of employment contract with AMC against both defendants, (2) prima facie tort against both defendants, (3) intentional interference with the contractual relationship between plaintiff and AMC by Lava, and (4) intentional interference with contractual relationship against both defendants with respect to plaintiff's prospective employment with St. Clare's. Following joinder of issue, defendants moved for summary judgment and Supreme Court dismissed the second and third causes of action but denied the motion with respect to the first and fourth causes of action. Defendants appeal.

Plaintiff's first cause of action alleges that defendants breached the employment contract when they discharged him without just and sufficient cause. In order to prevail on the motion for summary judgment, it was incumbent on defendants, as movant, to "make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853; *see*, CPLR 3212 [b]). Here, in support of their motion, defendants submitted an affidavit by Lava, who averred that the circumstances which precipitated plaintiff's termination constituted good cause.

Specifically, Lava averred that proper protocol in conducting a comprehensive neurological exam of a new patient required the patient to disrobe and put on a surgical gown. Moreover, he stated that the Department of Neurology required that when a female patient is examined by a male physician or resident, another female must be present during the entire physical examination.

It is undisputed that on April 22, 1992, during his physical examination of a 15-year-old female patient, plaintiff did not have a female staff member present nor was the patient's mother present in the examining room. It is also undisputed that plaintiff did not have the patient change into a surgical gown. When plaintiff began his examination of the patient's heart, he asked her to remove the left side of her bra whereupon he placed the stethoscope directly on her skin. He thereafter had the patient open and lower her pants so that he could examine her inguinal lymph nodes, located in the groin area. As the physical examination was proceeding, the mother entered the examination room and asked the patient if she felt comfortable with the examination; the patient said "no" and the examination ended. Lava subsequently interviewed the mother and patient in plaintiff's absence and the mother allegedly told him that she was not allowed to remain in the examining room despite repeated requests to do so. In our view, there was sufficient evidence presented by defendants to establish good cause for plaintiff's termination and to meet defendants' initial burden on the motion for summary judgment.

Nevertheless, plaintiff's opposition papers, which included plaintiff's own affidavit, raised a material issue of fact as to whether there was, in fact, good cause to terminate him. Specifically, plaintiff averred that the examination of the patient was proper, that there was no written or unwritten policy at AMC that a patient need be completely disrobed and given a surgical gown prior to examination, that neurological testing can be performed without the patient disrobing, that on April 22, 1992 there were no female staff members available to accompany him in the patient's physical examination and that the mother had never requested to remain in the examination room. Construing the facts in a light most favorable to plaintiff, the nonmoving party (*see, Russell v A. Barton Hepburn Hosp.*, 154 AD2d 796, 797), we conclude that plaintiff's proof, constituting more than conclusory allegations, was sufficient to raise a material issue of fact as to the issue of good cause for termination; therefore, summary judgment was properly denied on the first cause of action.

Next, defendants argue that Supreme Court improperly denied their motion for dismissal of the fourth cause of action in the complaint. We agree. Initially, we note that plaintiff labeled this cause of action as one alleging intentional interference with a contractual relationship with relation to plaintiff's prospective employment with St. Clare's. However, the record establishes that the April 16, 1992 letter from St. Clare's to plaintiff, accepting plaintiff into its Family Practice Residency Program, was only an offer; there was no evidence that plaintiff actually accepted the offer or that he entered into an employment contract with St. Clare's. Absent the existence of a contract, a claim for tortious interference with contractual relations is not viable (*see, NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 620; *Etkin & Co. v Patrusky*, 235 AD2d 300).

Nevertheless, although the parties were not business competitors (*see, Butler v Delaware Otsego Corp.*, 234 AD2d 639), it appears that the fourth cause of action alleges a claim of tortious interference with prospective business relations. Significantly, "[i]n order to recover damages for interference in such a situation, plaintiff was required to show that [defendants] used 'wrongful means'" (*Home Town Muffler v Cole Muffler*, 202 AD2d 764, 766; *see, NBT Bancorp v Fleet/Norstar Fin. Group, supra; Etkin & Co. v Patrusky, supra; Butler v Delaware Otsego Corp., supra*).[2] "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract" (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191; *see, NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, *supra*). Along with demonstrating wrongful means, a plaintiff must also establish that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations (*see, NBT Bancorp v Fleet/Norstar Fin. Group*, 215 AD2d 990, *affd* 87 NY2d 614).

Here, plaintiff maintains that Lava caused St. Clare's to rescind its employment offer by wrongfully relaying the information that plaintiff had been terminated from his employment when he allegedly was only suspended pending a hearing. No-

---

2. To the extent that certain cases from the Second Department indicate that the subject cause of action may be maintained in the absence of wrongful means (*see, e.g., Bogdan v Peekskill Community Hosp.*, 211 AD2d 692; *Datlow v Paleta Intl. Corp.*, 199 AD2d 362, 363; *Slifer-Weickel, Inc. v Meteor Skelly*, 140 AD2d 320, 322), we respectfully disagree.

tably, an examination of AMC's bylaws indicates that there were circumstances pursuant to which an employee could be terminated, as opposed to suspended, prior to a hearing. In any event, assuming, arguendo, that Lava wrongfully informed St. Clare's that plaintiff had been terminated, the undisputed proof submitted by defendants establishes that this information was not the cause of St. Clare's withdrawal of the employment offer. The May 1, 1992 letter from Dufresne only requested information about the charges concerning plaintiff and did not constitute an unequivocal rescinding of the offer. Dufresne avers in his affidavit that the offer was withdrawn based on his discovery that plaintiff was not receiving credit for his year of residency at AMC, not because of the charges of impropriety.[3] Therefore, defendants' motion to dismiss this cause of action should have been granted.

Crew III, White, Casey and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for summary judgment dismissing plaintiff's fourth cause of action; motion granted to that extent and said cause of action dismissed; and, as so modified, affirmed.

---

3. According to Dufresne, credit for plaintiff's year of residency at AMC was a nonwaivable requirement and plaintiff had previously given the impression that he was receiving such credit.