Lance F. SCHULTZ, Plaintiff,

v.

NORTH AMERICAN INSURANCE GROUP, Successor in interest to American Realty Tax Services, Incorporated, Pinnacle Real Estate Tax Services, Successor in interest to American Realty Tax Services of New York, Inc., Linda Ripperger, Defendants.

No. 98–CV–6188L.

United States District Court,
W.D. New York.

Feb. 5, 1999.

Frank A. Aloi, Rochester, NY, for plaintiff.

Gordon S. Dickens, Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, NY, for defendants.

*DECISION AND ORDER*

LARIMER, Chief Judge.

### I. Procedural Background

Plaintiff Lance F. Schultz ("Schultz"), a New York citizen, commenced this action in New York State Supreme Court, Monroe

County, on April 6, 1998. Defendants North American Insurance Group[1] ("National Insurance"), a California corporation; Pinnacle Real Estate Tax Services ("Pinnacle"), a Delaware corporation; and Linda Ripperger, a Virginia citizen, removed the action to this Court on diversity grounds. Pending before this Court is defendants' motion to dismiss the first cause of action, which defendants characterized as a claim for "wrongful discharge."

For reasons discussed, *infra,* plaintiff's first cause of action is dismissed, with leave to amend on grounds consistent with this decision. Plaintiff's second cause of action is dismissed with prejudice as moot.

## II. Factual Allegations

The facts set forth here have been culled from the allegations in the complaint. Schultz was employed as a regional manager by American Realty Tax Services, Inc. ("ARTS"), located in Fairport, New York. Schultz and ARTS were party to an employment agreement executed on May 31, 1996. The agreement covered compensation and contained non-competition and non-solicitation clauses. A May 7, 1997 amendment to that agreement provided that either party could terminate the agreement without notice.[2]

It is alleged that in August of 1997, Shultz learned that one of ARTS' clients was being overcharged by Ripperger, the ARTS vice president of office operations. Shultz also became aware of " 'irregular' business practices of ARTS which involved the procurement of clients through payment of certain 'fees' to the client banks by senior corporate officers of ARTS." Complaint ¶ 20. Shultz allegedly reported these concerns to Ripperger, who warned him to keep silent.

American Realty Tax Services was purchased by National Insurance and is now operated as Pinnacle. Prior to the closing of the purchase, National Insurance set up interviews for ARTS regional managers, assistant vice presidents, and vice presidents, and apparently indicated its interest in retaining as many of ARTS' employees as possible. According to Shultz, his qualifications and job performance made him a "singularly well qualified" candidate for employment with National Insurance. Complaint ¶ 24. Schultz was informed by Ripperger on August 28, 1997, that he would be interviewed the following day by representatives of National Insurance. When he met Ripperger the morning of his interview, however, she terminated him without explanation. Schultz did not attend the interview and was not retained by National Insurance.

## III. Discussion

In assessing a defendant's motion to dismiss, a court must accept as true "all well-pleaded factual averments in the complaint" and "draw[ ] all reasonable inferences in the plaintiff's favor." *Wright v. Ernst and Young, LLP,* 152 F.3d 169, 173 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999). The court's consideration "is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken. Dismissal of the complaint is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.,* 155 F.3d 59, 67 (2d Cir.1998) (citation omitted) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see* FED.R.CIV.P. 12(b).

Schultz alleges facts in his Answering Affidavit not found in the complaint. Consistent with Rule 12(b), having chosen not to convert the motion into one for summary judgment, this Court's inquiry is limited to the four corners of the complaint. Additional facts

---

1. The defendant named as North American Insurance Group notes that it has been incorrectly named, the correct name being "National Insurance Group." As such, this defendant is referred to as "National Insurance."

2. The amendment is dated without year. However, the parties agreed at oral argument that the amendment was executed in 1997.

raised in submissions filed subsequent to the complaint will not be considered in evaluating the motion to dismiss.[3]

### A. Plaintiff's First Cause of Action[4]

Defendants moved under Rule 12(b)(6) to dismiss what they characterized as a claim for wrongful discharge. Schultz's Answering Affidavit alleged that the contested cause of action is actionable as "tortious interference with prospective contract rights and/or business relationship(s)."

The exact nature of Schultz's first cause of action is, to say the least, murky. The complaint sets forth a series of facts which suggest that Schultz was wrongfully terminated from his employment. This suggests a wrongful discharge claim. The complaint also makes reference to the fact that Schultz was fired to prevent him from discharging certain undefined fiduciary duties to ARTS. This could be interpreted to plead a claim under New York's Whistleblower's Statute. NEW YORK LABOR LAW § 740. And finally, plaintiff's attorney suggests, in his response to defendants' motion to dismiss, that the first cause of action is really a claim for tortious interference with prospective business or contractual relations, not for wrongful discharge. This confusion as to the exact nature of the claim is exacerbated by the fact that plaintiff never specifically states in the complaint the basis for the requested relief. For example, the complaint never refers to the tortious interference theory and the first suggestion of its applicability by plaintiff was in response to defendants' motion to dismiss. Given the amorphous nature of Schultz's first cause of action, I will address the several possible bases for relief.

### 1. Wrongful Discharge

■ New York courts have long held that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Rooney v. Tyson,* 127 F.3d 295, 296 (2d Cir.1997) (citations omitted); *certified question answered,* 91 N.Y.2d 685, 689, 674 N.Y.S.2d 616, 697 N.E.2d 571 (1998).[5] Schultz has no basis for contractual relief. His contract of employment could be terminated without notice. Therefore, relief, if any, for the discharge must be based elsewhere as plaintiff now apparently concedes.

### 2. Whistleblower's Statute

■ An exception to the at-will doctrine, New York's Whistleblower's Statute protects employees from retaliatory personnel action where the employee:

> discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulations which violation creates and presents a substantial and specific danger to the public health or safety.

N.Y. LABOR LAW § 740(2)(a). An employee's testimony about, or objection or refusal to participate in, such a violation is also protected. N.Y. LABOR LAW § 740(2)(b), (c).

Schultz alleges that his firing was "intended to prevent [him] from making truthful disclosures, ... concerning acts by [ARTS']

---

3. Plaintiff made two simultaneous submissions to the Court in response to defendants' motion to dismiss: an "Answering Affidavit," signed by Schultz, and an "Affirmation in Opposition to Motion," signed by Schultz's attorney. Both submissions are considered only as to the legal arguments contained therein.

4. Although the employment agreement between Schultz and ARTS contained a forum selection ·clause requiring that the agreement be interpreted under Virginia law, Schultz originally filed suit in New York state court. In their Motion to Dismiss, defendants argued unopposed that New York law is applicable to the present dispute. Moreover, both parties agreed at oral argument to the applicability of New York law. As such, Schultz's claim will be determined under New York law. *See Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991) (Even in the presence of a choice of law clause, parties' "conduct during litigation may indicate assent to the application of another state's law.").

5. In *Rooney,* the Second Circuit certified the question of whether a particular oral contract could be considered for a fixed duration. In answering this question, the New York Court of Appeals also reiterated New York's at-will doctrine.

faithless employees and/or officers." Complaint ¶ 35. Plaintiff's Affirmation in Opposition to Motion suggests that activities referred to in the complaint as "overbilling" and "irregular business practices" could be considered "actionable larceny." Schultz contends that these activities could be considered a danger to public health or safety as defined in the Whistleblower's Statute.

■ Assuming that Schultz could prove an actual violation of law, he must also show that the violation "creates and presents a substantial and specific danger to the public health or safety." N.Y. LABOR LAW § 740(2)(a). Under New York law, claims alleging fraudulent economic practices do not constitute a danger to public health or safety. *McGrane v. Reader's Digest Ass'n, Inc.*, 822 F.Supp. 1044, 1051 (S.D.N.Y.1993) ("Financial improprieties within a corporation do not constitute threats to public health or safety."); *Remba v. Federation Employment & Guidance Service*, 76 N.Y.2d 801, 559 N.Y.S.2d 961, 559 N.E.2d 655 (1990) (Fraudulent billing does not create a substantial and specific danger to the public health or safety.).

It is clear that Schultz cannot maintain an action for wrongful discharge, nor is he protected from termination under the Whistleblower's Statute. As such, to the extent that Schultz's first cause of action is one for wrongful discharge or asserts a whistleblower's claim, this cause of action is dismissed with prejudice.

### 3. Tortious Interference with Prospective Business Relations

■ In order to make a claim for tortious interference with prospective business relations, a plaintiff must show that: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir.1997); *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 1998 WL 704112, at *15 (E.D.N.Y. Oct.7, 1998).

■ In essence, a claim for tortious interference with prospective business relations lies when "the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." *M.J. & K. Co., Inc. v. Matthew Bender and Co., Inc.*, 220 A.D.2d 488, 490, 631 N.Y.S.2d 938 (2d Dep't 1995) (citations omitted); *see Haddle v. Garrison*, —— U.S. ——, ——, 119 S.Ct. 489, 492, 142 L.Ed.2d 502 (1998).

■ A plaintiff may show that the interference was accomplished through wrongful or unlawful means. "Wrongful means" includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 (2d Cir.1998); *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.*, 215 A.D.2d 990, 991, 628 N.Y.S.2d 408 (3d Dep't 1995), *aff'd* 87 N.Y.2d 614, 624, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996). Where the alleged interference was accomplished through lawful means, a plaintiff must show that the defendant "acted for the sole purpose of inflicting intentional harm." *NBT Bancorp*, 215 A.D.2d at 990, 628 N.Y.S.2d 408; *see M.J. & K. Co.*, 220 A.D.2d at 490, 631 N.Y.S.2d 938 ("the motive for the interference must be solely malicious"); *see also* 72 N.Y.Jur.2d, Interference, § 44 (1988).

An accommodating view of the complaint suggests that Schultz has alleged some facts that, if set forth in a properly pleaded complaint, could suggest a tortious interference claim. However, in its present state, this cause of action is fatally vague. Yet it does appear that Schultz could plead a set of facts that would survive a motion to dismiss. As such, the first cause of action, considered as one for tortious interference with prospective business relations, is dismissed without prejudice under Rule 12(b)(6). Schultz is, however, granted leave to amend the first cause of action, subject to the requirements of Rule 11, to set forth a proper claim for tortious interference. Plaintiff's amended complaint must be filed within 20 days from entry of this order.

### B. Plaintiff's Second Cause of Action

Plaintiff's second cause of action seeks a declaration that the restrictive covenant in the Employment Agreement be considered unenforceable. The parties agreed at oral argument that due to the passage of time, this cause of action was moot. As such, this cause of action is dismissed with prejudice.

### CONCLUSION

Defendants' motion to dismiss (Dkt.# 3) is granted. The first cause of action in the complaint is dismissed without prejudice. The second cause of action is dismissed with prejudice. Plaintiff will be granted leave to file an amended complaint consistent with this decision within twenty (20) days of entry of this decision and order.

IT IS SO ORDERED.