█ PETER LAMPACK AGENCY, INC., Appellant, v MARTHA GRIMES et al., Respondents. [939 NYS2d 409]—

Orders, Supreme Court, New York County (Bernard J. Fried, J.), entered October 8, 2010 and November 1, 2010, which, insofar as appealed from as limited by the briefs, granted defendant Martha Grimes's motion to dismiss the first through seventh causes of action as against her, granted defendant Penguin Group (USA) Inc.'s motion to dismiss the first through seventh causes of action as against it, and denied plaintiff's cross motion for leave to amend the complaint, unanimously affirmed, with costs.

The contracts at issue in this case are not ambiguous (*see Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]; *Bajraktari Mgt. Corp. v American Intl. Group, Inc.*, 81 AD3d 432 [2011]). It is not reasonable to interpret the phrase "this Agreement" to include either extensions of the 1999-2003 agreements or an agreement for the future work mentioned in the 2005 agreement (for the Black Cat). If Grimes and Penguin had meant to give plaintiff commissions on such extensions and future agreement, they would have said so, especially since the 2005 agreement had a specific option on next work clause (*see e.g. Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]).

Interpreting "this Agreement" to mean only the actual contract signed by the parties, not future agreements or extensions, is consistent with the doctrine that "[a]n at-will sales representative is entitled to post-discharge commissions only if the parties' agreement expressly provided for such compensation" (*Swits v New York Sys. Exch.*, 281 AD2d 833, 835 [2001] [internal quotation marks omitted]; *see also Scott v Engineering News Publ. Co.*, 47 App Div 558 [1900]). Under its interpreta-

tion of "this Agreement," plaintiff would be entitled to a 15% commission on the Black Cat and on all future extensions of the 1999-2003 contracts, although it had no role in negotiating either. This would be an absurd result (*see Scott*, 47 App Div at 560).

Plaintiff contends that it was the "procuring cause" of the Black Cat contract and the extensions of the 1999-2003 agreements. However, the complaint does not allege that plaintiff was the procuring cause of that contract or those extensions; it merely alleges that plaintiff procured the underlying 1999-2005 agreements. Moreover, the documentary evidence shows that plaintiff was not the procuring cause of the Black Cat contract; Grimes's new representative was the procuring cause of that contract. In any event, the procuring cause doctrine is inapplicable here. It is "generally applied to real estate transactions and almost exclusively to individual transactions where a broker seeks to recover commissions for a single sale" (*UWC, Inc. v Eagle Indus.*, 213 AD2d 1009, 1010-1011 [1995], *lv denied* 85 NY2d 812 [1995] [citations omitted]; *see also e.g. Devany v Brockway Dev., LLC*, 72 AD3d 1008 [2010]).

We also find that plaintiff has not pleaded a viable claim for breach of the covenant of good faith and fair dealing (*see Pappas v Tzolis*, 87 AD3d 889, 896 [2011]).

The proposed amended complaint fails to state a cause of action for breach of an implied-in-fact contract because there exists an express contract covering the same subject matter (*see Julien J. Studley, Inc. v New York News*, 70 NY2d 628, 629 [1987]). It fails to state a claim for promissory estoppel because the promise alleged—to pay commissions for extensions of the agreement—is not a legal duty independent of the agreement but arises out of the agreement itself (*see MatlinPatterson ATA Holdings LLC v Federal Express Corp.*, 87 AD3d 836, 842-843 [2011]). Concur—Tom, J.P., Friedman, Acosta, DeGrasse and Román, JJ. **[Prior Case History: 29 Misc 3d 1208(A), 2010 NY Slip Op 51749(U).]**