■ MARK J. NELSON, Appellant, v CAPITAL CARDIOLOGY AS-SOCIATES, P.C., et al., Respondents. [949 NYS2d 530]—

Egan Jr., J.

Plaintiff is a licensed physician and a former employee and shareholder of defendant Capital Cardiology Associates, P.C. (hereinafter CCA); at all times relevant, the individual defendants also were shareholders in CCA, as well as members of its executive committee. While affiliated with CCA, plaintiff and his wife became representatives of "Take Shape for Life" (hereinafter TSFL)—a health and wellness business designed to help people lose weight through the assistance of "health coaches." According to plaintiff, he received assurances from certain of the individual defendants that his participation in TSFL would not be in conflict with his obligations to CCA. In addition to developing his own TSFL business, plaintiff subsequently agreed to assist CCA in setting up such a program through its wellness center.

Approximately one year after plaintiff began his involvement with TSFL, questions arose regarding the income that he and his wife were receiving from this business venture (rumored to be roughly $600,000)—income allegedly generated at a point in time when CCA's own TSFL business purportedly was operating at a loss. Apparently believing that plaintiff may have diverted either patients or funds from CCA to his own business in order to achieve such earnings, CCA's executive committee demanded that plaintiff disclose certain personal financial information. Dissatisfied with plaintiff's response in this regard, the executive committee subsequently adopted a resolution in January 2009 requiring plaintiff to, among other things, either turn over all revenues generated by his TSFL business to CCA, terminate his business interest in TSFL or resign from CCA. Plaintiff elected to resign effective April 1, 2009.

Plaintiff thereafter commenced this action against CCA and certain of its shareholders alleging, insofar as is relevant here, that defendants tortiously interfered with his prospective contractual relations with CCA and breached section 3 (a) of the underlying shareholder agreement by refusing to repurchase his shares in CCA upon his resignation and tender certain "additional payments" due under the terms of that agreement. Defendants moved to dismiss the amended complaint for, among other things, failure to state a cause of action. Supreme Court partially granted defendants' motion, dismissing a portion of plaintiff's first cause of action and dismissing plaintiff's second, fourth and fifth causes of action in their entirety. This appeal by plaintiff ensued.[1]

We affirm. On a motion to dismiss for failure to state a cause of action, we must "afford the pleadings a liberal construction, accept the facts alleged therein as true, accord the plaintiff the benefit of every possible inference and determine whether the facts alleged fit within any cognizable legal theory" (*Matter of Upstate Land & Props., LLC v Town of Bethel*, 74 AD3d 1450, 1452 [2010]). Insofar as is relevant here, plaintiff's breach of contract claim alleges that defendants violated the terms of the shareholder agreement by refusing to tender certain additional payments (in the form of bonuses and a share of CCA's accounts receivable) purportedly due thereunder. The flaw in plaintiff's analysis on this point is that the shareholder agreement expressly provides that "compensation and other terms, conditions and provisions of employment" shall be governed by a separate contract, i.e., an employment agreement to be entered into between the individual shareholders and CCA.[2] As the shareholder agreement does not—by its own terms—govern the

---

**1.** Plaintiff, as so limited by his brief, appeals only the dismissal of his cause of action for tortious interference with prospective business relations and the partial dismissal of his breach of contract claim.

**2.** Although the cited employment agreement does not appear in the record on appeal, the language of the shareholder agreement certainly suggests that there indeed is a separate written contract governing plaintiff's compensation. If this is true, such agreement would bar plaintiff's implied contract claim (*see generally Peter Lampack Agency, Inc. v Grimes*, 93 AD3d 430, 431 [2012] [no cause of action for an implied contract lies where there is a written contract covering the same subject matter]). Assuming—for purposes of this motion—that no such written agreement exists (or that it exists but does not speak to the additional payments sought by plaintiff), we still are not persuaded that plaintiff has stated a claim for breach of an implied contract in this regard. The mere fact that plaintiff was paid an annual bonus in the past does not—standing alone—demonstrate his entitlement to such moneys upon his departure from CCA. Nor is the February 2009 email sent to plaintiff by CCA's then chief financial officer sufficient to state a cause of action in this regard. Notably, the email expressly provides that "nothing contained herein

"additional payments" sought by plaintiff, defendants cannot be said to have breached that agreement by failing to tender the sums allegedly due. Accordingly, Supreme Court properly dismissed this portion of plaintiff's breach of contract claim.

As for plaintiff's cause of action against the individual defendants for tortious interference with his prospective business relations with CCA, it is true—as defendants point out and Supreme Court found—that "New York does not recognize a cause of action for the . . . abusive or wrongful discharge of an at-will employee, and this rule cannot be circumvented by casting the cause of action in terms of tortious interference with employment" (*McHenry v Lawrence*, 66 AD3d 650, 651 [2009], *lv denied* 15 NY3d 703 [2010]). However, an at-will employee nonetheless may assert such a cause of action "where he or she can demonstrate that the defendant utilized wrongful means to effect his or her termination" (*id.*; *see Lockheed Martin Corp. v Aatlas Commerce, Inc.*, 283 AD2d 801, 803 [2001]; *Murray v SYSCO Corp.*, 273 AD2d 760, 761 [2000]). Such "wrongful means," in turn, "must amount to a crime or an independent tort" (*Ullmannglass v Oneida, Ltd.*, 86 AD3d 827, 830 [2011] [internal quotation marks and citation omitted]), e.g., "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191 [1980]; *accord Carvel Corp. v Noonan*, 3 NY3d 182, 191 [2004]). Persuasion alone will not suffice (*see NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 624 [1996]; *Jabbour v Albany Med. Ctr.*, 237 AD2d 787, 790 [1997]).

Although plaintiff alleges that the individual defendants employed various means designed to, among other things, discredit him and dupe him into believing that CCA's TSFL business was operating at a loss, plaintiff's assertions in this regard—even if liberally construed—fall far short of actionable fraud with respect to those defendants. Additionally, although plaintiff indeed has asserted that the individual defendants were, in essence, out to get him, these "conclusory allegations of malicious motives on defendants' part [are] insufficient to avoid dismissal of this cause of action" (*Ullmannglass v Oneida, Ltd.*, 86 AD3d at 830). Accordingly, Supreme Court's order is in all respects affirmed.

Mercure, J.P., Rose, Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.

---

should be construed as a guarantee of any amount whatsoever," and it is clear that "[t]here can be no valid claim of implied contract . . . where the purported contract indicates a lack of intent to be bound" (*Azimut-Benetti S.p.A. v Magnum Mar. Corp.*, 55 AD3d 483, 484 [2008]).