OPINION OF THE COURT
Shirley Werner Kornreich, J.
Plaintiffs, 30 CPS, LLC (LLC) and Dipak Nandi (collectively, plaintiffs), move for summary judgment on liability on breach of contract, the first cause of action in the amended complaint. Defendants, Board of Managers of Central Park South Medical Condominium and Russ Mandor (collectively, defendants), cross-move for summary judgment dismissing plaintiffs’ breach of contract claim and their second cause of action for tortious interference with prospective contractual relations.
Background
This action involves plaintiffs’ attempt to alter and sell, for residential use, the penthouse unit in premises located at 30 Central Park South, New York, New York (building). The members of the plaintiff LLC are plaintiff Dipak Nandi and his wife. The individual defendant, Mandor, is a member of the Condominium Board and was its president beginning prior to the LLC’s acquisition of the unit.
The amended complaint contains three causes of action: (1) breach of the Condominium bylaws and declaration, (2) tortious interference with prospective economic advantage or contractual relation, and (3) discrimination under Executive Law § 296.
The building was converted to a condominium in 1984 under a plan declared effective by 30 Central Park South Realty Corp. *1026 (sponsor). The unit was excluded from the Condominium conversion offering plan. The unit was leased by the sponsor to an Indian restaurant called Nirvana at the time that the plan was declared effective. Subsequently, the unit experienced a structural collapse and Nirvana went bankrupt.
There is no dispute that the building is located in an R10-H residential zoning district, but that it has been used for medical offices and a restaurant, pursuant to a zoning variance, initially issued in 1955, which has been extended to 2015. On March 15, 2004, by quitclaim deed, the sponsor transferred the unit to plaintiff LLC.
The declaration of the Condominium provides that the unit may be used for any lawful use under the New York City zoning resolutions and may be altered without approval of the Condominium Board. The bylaws reiterate that the unit may be used for any legal purpose and that alterations do not require approval of the Board. In addition, the bylaws obligate any person subject to them, including a board member or condominium officer, to execute any instrument and take any other action reasonably requested by any unit owner to effectuate the bylaws’ provisions, to effectuate any transaction contemplated by them, and to confirm or perfect any right to be created or transferred by them. Finally, the bylaws provide that the rights of the sponsor shall inure to the benefit of its successors or assigns, which would include the LLC.
In June 2004, the LLC submitted an application to the New York City Board of Standards and Appeals (BSA) for a letter stating that the BSA had no objection to converting the unit from a restaurant to a class A apartment. BSA granted the application on July 26, 2004, on the condition that the New York City Department of Buildings (DOB) ensured compliance with all other provisions of the zoning resolution and the Building Code. The DOB issued a work permit on November 5, 2005. It is undisputed that plaintiffs did not obtain authorization from the Board for the application to BSA.
When the Board learned of the application to the BSA, it refused to consent to the use of the unit as a residence. On October 24, 2005, an attorney for the Condominium wrote a letter to plaintiffs’ attorney stating that “our client will not permit residential use.” In a second letter, dated October 28, 2005, the same attorney wrote that residential use was prohibited by the bylaws because it was illegal under the certificate of occupancy. On November 11, 2005, the lawyer for the Condominium Board *1027 wrote to the DOB stating that the permit should be revoked because the application had not been authorized by the Board. On November 21, 2005, the Condominium’s attorney wrote to the BSA to request revocation of the permit to renovate the unit on the grounds that the application had not been made by the Condominium, the unit owner had not obtained the Board’s authorization prior to making the application, residential use would be incompatible with other uses and the building did not provide services needed for residential use. On December 29, 2005, the DOB issued a notice of intention to revoke its permit due to lack of authorization by the Condominium, citing sections 27-140 and 27-197 of the Administrative Code of the City of New York. On December 30, 2005, the DOB issued a 10-day notice of revocation of the permit. The Board’s president, defendant Mandor, also testified that he told Nandi that the Board had decided that it would not permit the use of the unit as a restaurant again.
On January 9, 2006, the attorney for the plaintiff LLC wrote to the Condominium’s property manager requesting that the Board execute a statement addressed to the DOB authorizing an application for a building permit to effectuate the alteration of the unit to residential use. The Board did not authorize the application.
Nandi claimed at his deposition that he had two potential buyers for the unit as a residence in December of 2005 through February 2006. Plaintiffs allege, based upon a January 2006 appraisal, that the value of the unit as a residence was $13,000,000 in 2006, higher than its value as commercial space. Plaintiffs claim that due to the Board’s failure to submit authorization for the conversion of the unit to a residence, on April 21, 2006, the LLC sold the unit for $5,200,000 to Cinzia 30 CPS, Inc. for use as a showroom. The contract damages sought by plaintiffs are the difference between the 2006 appraisal and the price paid by Cinzia, which equals $7,800,000. The record reflects that the Cinzia sale contract is dated February 22, 2006.
In February 2006, Cinzia, as contract vendee, entered into a contract with the Board, in which Cinzia agreed to pursue a change of the certificate of occupancy for the building and the variance for the unit from restaurant to office use. In paragraph 6 of the contract, the Board and Cinzia agreed that if Cinzia were unsuccessful in obtaining a change of use, then the Board had an option to buy the unit within a specified period of time or, if the Board chose not to exercise the option, it would sup *1028 port Cinzia’s efforts to convert the unit to a residence. The Board/Cinzia contract recognized that were the variance discontinued, the unit only could be used for residential purposes.
Plaintiffs also allege that Nandi is of Indian descent and national origin and that defendants’ behavior toward him, including the refusal to permit the unit to be sold for residential use, was based on discriminatory animus. Plaintiffs claim that Mandor made offensive remarks to Nandi regarding Indian food, such as that it stank and contained rats; that the Board prevented Nandi from having access to the unit or from entering it without building personnel; that the Board forced Nandi to sign a register when entering the building, although other owners were not required to; and that Mandor behaved in a rude and condescending manner toward Nandi.
Discussion
It is well established that summary judgment may be granted only when it is clear that no triable issue of fact exists. (Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986].) The burden is upon the moving party to make a prima facie showing of entitlement to summary judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979].) A failure to make such a prima facie showing requires a denial of the summary judgment motion, regardless of the sufficiency of the opposing papers. (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993].) If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact. (Alvarez at 324; Zuckerman at 562.) The papers submitted in support of and in opposition to a summary judgment motion are examined in the light most favorable to the party opposing the motion. (Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997].) Mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (Zuckerman at 562.) Upon the completion of the court’s examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].)
A. Breach of Contract
A condominium is declared effective pursuant to a declaration (Real Property Law § 339-e [7]). The operation of the *1029 property is governed by its bylaws, which are annexed to the declaration, as well as any amendment to the bylaws or declaration. (Real Property Law § 339-u; Schoninger v Yardarm Beach Homeowners’ Assn., 134 AD2d 1, 5-6 [2d Dept 1987].)
Here, there is no dispute that the bylaws provide that the unit could be used for any legal use, that residential use was legal under the zoning resolution, that the unit owner had the right to alter the unit in any way, that plaintiffs obtained conditional permission from the BSA to change the use to residential, subject to DOB approval, and that plaintiffs obtained a DOB permit for the alteration. Additionally, it is undisputed that the Board caused the DOB to revoke the permit and refused to consent to a change to residential use or to authorize the alterations for such use.
Defendants submitted only an attorney’s affirmation in opposition to the motion and in support of their cross motion. In their memorandum of law, they counter that residential use was not authorized under the certificate of occupancy and the variance. They contend that the bylaws and declaration did not require them to aid the LLC in obtaining a change in the use of the unit by supporting an amendment to the variance or certificate of occupancy for the building. Defendants point to the absence of a provision in the declaration or bylaws, which omitted a provision in the offering plan that the Board had no right to approve a change of the use of the unit or an amendment of the certificate of occupancy to authorize a different use. Defendants further contend that there was no breach because the LLC could have authorized the permit on its own in the event that the Board refused, pursuant to section 13.2 of the bylaws. Defendants claim that plaintiffs conveyed the impression that the LLC was attempting to convert the unit from use as a restaurant to another commercial use, which demonstrates that there was no violation of the declaration and bylaws.
Plaintiffs have established that defendants breached the bylaws and declaration by refusing to permit the LLC to alter the unit and convert it to residential use. The bylaws provide that the owner of the unit could alter it to any legal use. There is no dispute that residential use was legal and that a variance was obtained to authorize restaurant use. The BSA and the DOB had no objection to residential alteration or use until the Board objected to it.
Although residential use did not comply with the certificate of occupancy, it was incumbent upon the members and officers of *1030 the Condominium, pursuant to bylaws, section 13.1, upon the reasonable request of a unit owner, to “execute, acknowledge and deliver . . . such instruments . . . and take such other action ... in order either to effectuate the provisions of these ByLaws or any transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to any such transaction.” As it was contemplated by the bylaws that there would be no restriction on a legal use or alteration of the unit, the members of the Board and the officers of the Condominium were required to execute the instruments and take the actions needed to perfect the right of the unit owner to use and alter it for any legal purpose, including an amendment to the certificate of occupancy. A court should not adopt an interpretation of a contract that renders a provision meaningless. (General Elec. Co. v Hatzel & Buehler, 19 AD2d 40 [1st Dept 1963], affd 14 NY2d 639 [1964].) Indeed, the certificate of occupancy authorized a variance; the building was zoned for residential use. The breach occurred, at the latest, a reasonable time after plaintiffs’ January 9, 2006 request for the Board to submit written authorization for the alteration to the DOB.
Defendants incorrectly contend that the LLC could have utilized section 13.2 of the bylaws to execute instruments or take actions upon the Board’s refusal. That section applies to the declarant, which is defined in the bylaws and declaration as the sponsor. Moreover, section 13.2 is a remedy for breach, not a provision that negates one. Nor are defendants correct that section 13.1 does not bind the Condominium, but only its officers and Board members. A condominium is a legal entity that must act through its agents, such as officers and board members. (See e.g. Odell v 704 Broadway Condominium, 284 AD2d 52 [1st Dept 2001] [condominium president had apparent authority to bind board to alteration approval].) Finally, it would have been futile for the LLC to attempt to act on its own, after the Board had informed the DOB in November 2005 that it would not authorize the alteration.
However, the LLC, not Nandi, was the owner of the unit, with the right to alter it. Hence, only the LLC is entitled to summary judgment on liability on the first cause of action. In addition, as Mandor individually is not a party to the contractual documents, the cross motion is granted to the extent of dismissing the first cause of action as against him.
*1031 B. Interference with Prospective Contractual Relations or Economic Advantage
Plaintiffs allege that the LLC had a nonbinding economic prospect of selling the unit as a residence to potential buyers, but that defendants interfered with this prospect for discriminatory reasons. Defendants’ cross motion for summary judgment on this cause of action is based upon three theories: (1) the claim is one for breach of contract improperly pleaded as a tort; (2) interference with contractual relations does not lie against Mandor individually because the amended complaint does not allege tortious conduct by him separate from the actions of the Board; and (3) interference with prospective economic advantage requires proof of malice calculated to impair the plaintiffs business for the personal profit of the defendant.
Breach of a binding agreement and interfering with a nonbinding “economic relation[ ]” can both be torts, but the elements of the two torts are not the same. (Carvel Corp. v Noonan, 3 NY3d 182, 189 [2004].) Where there is an existing, enforceable contract and a defendant’s deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. (Id. at 189-190.) Where a suit is based on interference with a nonbinding economic relationship, the plaintiff must show that defendant’s conduct was not “lawful” but “more culpable,” such as a crime or an independent tort, or conduct intended to inflict harm on the plaintiff. (Id. at 190.) Other wrongful means that would support the claim are physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and economic pressure on potential customers of the plaintiff. (Id. at 191-192.) In Carvel, the Court left for another day the issue of whether other conduct, which is neither a crime nor a tort, would be culpable enough to support a claim of interference with economic relations. (Id. at 191-192.) In addition, the plaintiff must prove that the defendants knew of the proposed contract, intentionally interfered with it and that it would have been entered into but for the interference. (PJI2d 3:57 [2009].) As interference with prospective economic relations requires culpable conduct beyond a breach of contract, it is not a breach of contract improperly alleged as a tort. (See Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987] [breach of contract is not tort unless legal duty separate from contract has been violated]; accord Meyers v Waverly Fabrics, Div. of Schumacher & Co., 65 NY2d 75, 80 n 2 [1985].)
*1032 With respect to the requirement that the contract would have been made if not for the defendants’ conduct, Nandi testified that he lost two potential contracts to sell the unit for residential use: one with Steven Lagoudis and one with Dr. Sol Schwartz stein. However, with respect to Dr. Schwartzstein, Nandi admitted that he would not have accepted his offer of $6,000,000, which leaves only the prospective contract with Mr. Lagoudis. Plaintiff testified that his lawyer contacted the Board’s lawyer about Mr. Lagoudis’ offer, which is proof of the element that the Board had knowledge of the proposed contract. Plaintiffs allege that defendants interfered with the contract based upon animus and intolerance of Nandi’s national origin.
The remaining question is whether discrimination based upon national origin is conduct that can support a claim for interference with a prospective contract or economic relationship, which is an issue of first impression. Discrimination is not a tort claim. (Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 372 [2007].) Nor is it a crime. (See e.g. Executive Law § 291 [civil right to equal protection].) This court’s independent research has not disclosed an appellate case in New York in which the claim has been upheld or rejected where the alleged wrongful conduct was unlawful discrimination.
Nonetheless, the court rules that unlawful discrimination is sufficiently culpable to support a claim of interference with prospective economic relations. Certainly, it is morally reprehensible and unlawful to discriminate based upon national origin. Hence, there should be redress where an incipient contract is scuttled by someone motivated by hostility toward the national heritage of the proposed contracting party. Such conduct is sufficiently akin to malice to support the claim.
It is inappropriate at this stage of the action to grant summary judgment in favor of Mandor individually on the ground that he was merely acting on behalf of the Board. A corporate officer may be held individually liable for the commission of separate tortious or predatory acts. (Murtha v Yonkers Child Care Assn., 45 NY2d 913, 915 [1978]; Konrad v 136 E. 64th St. Corp., 246 AD2d 324 [1st Dept 1998].) Here, plaintiffs allege that Mandor made remarks evidencing animus toward Nandi’s national origin. Whether the Board itself engaged in discrimination or whether Mandor acted alone has not been explored fully in discovery. Plaintiffs have not had an opportunity for full disclosure relating to this claim. The record contains two outstanding court orders for disclosure of defendants’ computer *1033 files, due to Mandor’s testimony that he communicated with other Board members by e-mail. The computer files are in the process of being analyzed. Hence, it would be premature to grant summary judgment to defendants. (CPLR 3212 [f].) However, as Dipak Nandi did not own the unit and could not sell it, the second cause of action is dismissed to the extent that it is asserted by him.
Accordingly, it is ordered that plaintiffs’ motion for summary judgment on liability on their first cause of action for breach of contract is granted solely in favor of plaintiff 30 CPS, LLC, and against the defendant Board of Managers of Central Park South Medical Condominium, and is dismissed with respect to plaintiff Dipak Nandi and as against Russ Mandor, individually, and damages shall be tried at the trial of the action; and it is further ordered that defendants’ cross motion for summary judgment dismissing plaintiffs’ first and second causes of action is granted to the extent that the first cause of action is dismissed insofar as it is asserted by plaintiff Dipak Nandi and as against Russ Mandor; and Dipak Nandi’s second cause of action is dismissed as against all defendants; and in all other respects the cross motion is denied.