In an action, inter alia, to recover damages for breach of contract and tortious interference with contract, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Dutchess County (Brands, J.), dated March 3, 2011, as granted that branch of the motion of the defendants Marquise Construction and Development Corp., Bill Robbie, and Robin “Doe” which was pursuant to CPLR 3211 (a) to dismiss the complaint insofar as asserted against them, granted that branch of the cross motion of the defendants MA Morris Associates-Engineering Consultants, PLLC, and Mark Long which was for summary judgment dismissing the cause of action alleging tortious interference with contract insofar as asserted against them, and granted that branch of the cross motion of the defendants Town of Poughkeepsie and Marc Pfeiffer which was for summary judgment dismissing the complaint insofar as asserted against them.
*1010 Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable to the respondents appearing separately and filing separate briefs.
The defendant Marquise Construction and Development Corp. (hereinafter Marquise) was retained by the defendant Town of Poughkeepsie for a road improvement project (hereinafter the project). Pursuant to the contract between Marquise and the Town, Marquise was permitted to hire subcontractors subject to the approval of the Town’s engineering consultant for the project, the defendant MA Morris Associates-Engineering Consultants, PLLC (hereinafter Morris). Marquise was required to submit the names of its chosen subcontractors to the defendant Mark Long, a Morris employee who was the project engineer, for acceptance or rejection in a timely manner so as to avoid delay of the project. The defendant Bill Robbie, a project manager and site supervisor with Marquise, selected the plaintiff Moulton Paving, LLC (hereinafter Moulton), owned and operated by the plaintiff Joshua Reich, to perform the work required for the project, and an unsigned subcontract agreement was delivered to Moulton on September 3, 2009. The initial communication between Moulton and Marquise took place in June or July of 2009, but Marquise did not inform Long of its selection of Moulton until September 16, 2009, several days before work was scheduled to begin. On September 17, 2009, after Reich met with the defendant Mark Pfeiffer, the Town Highway Superintendent, Robin “Doe,” a Marquise employee, and Long, Robbie contacted Reich and advised him that Moulton had been terminated based upon the Town’s rejection of Moulton.
The plaintiffs, Moulton and Reich, commenced the instant action alleging breach of contract as against Marquise, and tortious interference with contract and with a prospective business advantage as against the remaining defendants. With regard to the tortious interference causes of action, the plaintiffs alleged that the Town’s rejection of Moulton was motivated by discrimination against Reich because he is a Hassidic Jew, a fact of which the defendants were not aware until meeting Reich for the first time on September 16, 2009.
The Supreme Court determined that there was no valid contract in existence between the plaintiffs and Marquise, and that the plaintiffs failed to raise a triable issue of fact in opposition to the defendants’ prima facie showing that the Town rejected Moulton as paving contractor for legitimate business reasons. We agree.
The existence of a binding contract is an essential element of *1011 a cause of action to recover damages for breach of contract (see Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc., 84 AD3d 122, 127 [2011]; Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 806 [2011]; JP Morgan Chase v J.H. Elec. of N.Y., Inc., 69 AD3d 802, 803 [2010]), as well as for tortious interference with a contract (see Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]; Miller v Theodore-Tassy, 92 AD3d 650-651 [2012]; Monex Fin. Servs., Ltd. v Dynamic Currency Conversion, Inc., 76 AD3d 515 [2010]; Dome Prop. Mgt., Inc. v Barbaria, 47 AD3d 870 [2008]; Beecher v Feldstein, 8 AD3d 597, 598 [2004]).
“ ‘[I]f the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed’ ” (ADCO Elec. Corp. v HRH Constr., LLC, 63 AD3d 653, 654 [2009], quoting Scheck v Francis, 26 NY2d 466, 469-470 [1970]; see Matter of Municipal Consultants & Publs. v Town of Ramapo, 47 NY2d 144, 148 [1979]; Lost Cr. Assoc. v Marine Midland Bank, 293 AD2d 719, 720 [2002]). “Moreover, when the parties’ intent to be bound by a contractual obligation ‘is determinable by written agreements, the question is one of law’ ” (ADCO Elec. Corp. v HRH Constr., LLC, 63 AD3d at 654, quoting Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 291 [1973]; see Berghold v Kirschenbaum, 287 AD2d 673 [2001]).
In support of that branch of their motion which was pursuant to CPLR 3211 (a) (1) to dismiss the complaint insofar as asserted against them, Marquise, Robbie, and “Doe” (hereinafter collectively the Marquise defendants) submitted a copy of the subcontractor’s agreement (hereinafter the agreement) that Marquise delivered to Moulton on September 3, 2009. Subsection 5.5 of the agreement provided that “The agreement, as tendered, shall in no way be construed to be a binding agreement, nor shall it in any way be considered or identified as an instrument or document of intent upon the part of Marquise . . . , only upon complete execution of the Subcontract Agreement by an officer of Marquise . . . , and the subsequent delivery thereof, is the Agreement considered to be effective and a binding agreement.” This clear language established Marquise’s intent, as a matter of law (see Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d at 291; ADCO Elec. Corp. v HRH Constr., LLC, 63 AD3d at 654; Berghold v Kirschenbaum, 287 AD2d at 673), that it not be bound and not be held liable under the agreement unless and until it was signed by Marquise (see Municipal Consultants & Publs. v Town of Ra *1012 mapo, 47 NY2d at 148; Scheck v Francis, 26 NY2d at 469-470; ADCO Elec. Corp. v HRH Constr., LLC, 63 AD3d at 654; Lost Cr. Assoc. v Marine Midland Bank, 293 AD2d at 720). Since it is undisputed that the agreement was never signed by either party, the Marquise defendants established conclusively, as a matter of law, that there was no contract in existence at the time of the alleged breach.
We reject the plaintiffs’ contention that, upon the subcontractor’s commencement of work on the project, the provision in subsection 1.1 of the agreement, stating that the agreement was to “be considered accepted by both parties as is, as if signed,” applied even if the agreement remained unsigned by Marquise. “[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect” (LI Equity Network, LLC v Village in the Woods Owners Corp., 79 AD3d 26, 35 [2010] [internal quotation marks omitted]; see Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d 985, 987 [2009]; G&B Photography v Greenberg, 209 AD2d 579, 581 [1994]). The plaintiffs’ interpretation of subsection 1.1 conflicts with the clear meaning of subsection 5.5, whereas the two seemingly conflicting provisions reasonably can be reconciled by interpreting subsection 1.1 to provide that, once an agreement signed by an officer of Marquise was delivered to Moulton Paving, the agreement could be “considered accepted by both parties as is, as if signed” (emphasis added), once Moulton commenced work on the project, without Reich or anyone from Moulton having to sign the agreement.
Here, without the element of an existing contract, the causes of action alleging breach of contract and tortious interference with contract cannot stand. Since the documentary evidence submitted by the Marquise defendants “resolve[d] all factual issues as a matter of law, and conclusively dispose[d] of the plaintiff’s claim” (Sato Constr. Co., Inc. v 17 & 24 Corp., 92 AD3d 934, 935 [2012]; see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Jesmer v Retail Magic, Inc., 55 AD3d 171, 180-181 [2008]; Prudential Wykagyl/Rittenberg Realty v Calabria-Maher, 1 AD3d 422 [2003]), the Supreme Court properly granted that branch of the Marquise defendants’ motion which was pursuant to CPLR 3211 (a) (1) to dismiss the cause of action alleging breach of contract against Marquise and the causes of action alleging tortious interference with contract against Robbie and Robin “Doe.” Moreover, the Supreme Court properly awarded summary judgment dismissing the cause of action alleging tortious interference with contract asserted *1013 against Morris and Long, and asserted against the Town and Pfeiffer (hereinafter together the Town defendants), since no contract existed.
The Supreme Court properly awarded summary judgment to the Town defendants dismissing the cause of action alleging tortious interference with a prospective business advantage asserted against them. “To establish a claim of tortious interference with prospective economic advantage, a plaintiff must demonstrate that the defendant’s interference with its prospective business relations was accomplished by ‘wrongful means’ or that defendant acted for the sole purpose of harming the plaintiff’ (Caprer v Nussbaum, 36 AD3d 176, 204 [2006] [some internal quotation marks omitted]; see Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]; NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 624 [1996]; Manti's Transp., Inc. v C.T. Lines, Inc., 68 AD3d 937, 940 [2009]). “As a general rule, such wrongful conduct must amount to a crime or an independent tort, and may consist of ‘physical violence, fraud or misrepresentation, civil suits and criminal prosecutions’ ” (Smith v Meridian Tech., Inc., 86 AD3d 557, 560 [2011], quoting Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 191 [1980]; see NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d at 624; Manti's Transp., Inc. v C.T. Lines, Inc., 68 AD3d at 940).
Here, the Town defendants demonstrated their prima facie entitlement to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]) by submitting affidavits of Pfeiffer and Long relating their legitimate concerns about Moulton’s ability to perform the job. In opposition, the plaintiffs submitted Reich’s deposition testimony, in which he related what had happened when he met with representatives of Marquise, Morris, and the Town on September 16 and 17, 2009, describing, in particular, Pfeiffer’s rude behavior toward him. However, Pfeiffer’s alleged rude behavior, by itself, was insufficient to establish animus towards Reich’s religious beliefs, or that such animus motivated the actions of Pfeiffer and the Town (cf. 30 CPS, LLC v Board of Mgrs. of Cent. Park S. Med. Condominium, 23 Misc 3d 1024, 1032 [2009]), so as to raise a triable issue of fact in that regard (see Zuckerman v City of New York, 49 NY2d at 562).
In light of our determination, the parties’ remaining contentions have been rendered academic. Rivera, J.P., Balkin, Belen and Chambers, JJ., concur.