Ray v Stockton (2018 NY Slip Op 04861)





Ray v Stockton


2018 NY Slip Op 04861


Decided on June 29, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 29, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, PERADOTTO, DEJOSEPH, AND CURRAN, JJ.


260 CA 17-00423

[*1]CARRIANN RAY, PLAINTIFF-RESPONDENT,
v
VICTORIA J.G. STOCKTON, DEFENDANT-APPELLANT. (APPEAL NO. 2.) 






ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (BRIAN D. GINSBERG OF COUNSEL), FOR DEFENDANT-APPELLANT.
O'HARA, O'CONNELL & CIOTOLI, FAYETTEVILLE (STEPHEN CIOTOLI OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Oneida County (Bernadette T. Clark, J.), entered November 16, 2016. The judgment awarded plaintiff the sum of $5,151,892.33 as against defendant. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs, the motion is granted, the verdict is set aside, and a new trial is granted.
Memorandum: From 2006 until her termination in August 2012, plaintiff served as superintendent of the New York State School for the Deaf (NYSSD) in Rome, New York. Defendant was a longtime music and Latin teacher at NYSSD, as well as the local union president of the New York State Public Employees' Federation (PEF), a union that represents the teachers at NYSSD. In 2012, defendant wrote a letter to the New York State Education Department (SED) accusing plaintiff of, among other things, financial impropriety. Defendant did not indicate in any way in her letter that she was acting in her union representative capacity, and she never filed a grievance or otherwise pursued a remedy pursuant to a collective bargaining agreement. After a request for more information from SED, defendant submitted a petition with teachers' signatures requesting an "immediate review of [plaintiff's] practices" as well as statements documenting allegations of "unprofessional conduct, abuse of positional power and potential illegal actions taken by [plaintiff]." Defendant, along with several teachers and staff members, visited the office of SED to discuss the allegations. Thereafter, SED terminated plaintiff's employment.
Plaintiff commenced an action for tortious interference with prospective economic advantage, tortious interference with economic relations, and prima facie tort against Annette Franchini, individually and as Director of Human Resources of SED, and we affirmed the order and judgment granting Franchini's motion to dismiss the complaint (Ray v Franchini, 133 AD3d 1235, 1235 [4th Dept 2015]). Plaintiff then commenced the instant action against defendant asserting, inter alia, a cause of action for tortious interference with prospective economic advantage on the theory that defendant, "acting solely out of malice, bad faith and retaliatory motives and entirely outside the scope of her employment duties, intentionally interfered with the economic relationship between Plaintiff and the SED by spreading false statements and rumors, and by exerting her influence to pressure teachers and staff to sign a petition to terminate Plaintiff's employment." A jury trial was held, after which plaintiff was awarded approximately $5 million in damages, and Supreme Court denied defendant's posttrial motion to set aside the verdict.
On appeal, defendant argues, among other things, that the jury verdict is not supported by legally sufficient evidence inasmuch as the evidence did not support a finding that she acted either with the sole purpose of inflicting harm on plaintiff or via "wrongful means," a necessary [*2]element of the tortious interference with prospective economic advantage cause of action. Alternatively, defendant contends that the court should have granted her posttrial motion to the extent that she sought to set aside the verdict and sought a new trial on the ground that the court's erroneous legal instructions on the cause of action permitted the jury to find wrongful means from nothing more than the fact that defendant had made a false statement. We agree with defendant that the court's jury instructions were erroneous and, as a result, we conclude that the court erred in denying defendant's motion to set aside the verdict and for a new trial.
To state a cause of action for tortious interference with prospective economic advantage, "a plaintiff must plead that the defendant directly interfered with a third party and that the defendant either employed wrongful means or acted for the sole purpose of inflicting intentional harm on plaintiff[]" (Posner v Lewis, 18 NY3d 566, 570 n 2 [2012] [internal quotation marks omitted]; see Carvel Corp. v Noonan, 3 NY3d 182, 189-191 [2004]; NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 621 [1996]; KAM Constr. Corp. v Bergey, 151 AD3d 1706, 1707 [4th Dept 2017]; Thome v Alexander & Louisa Calder Found., 70 AD3d 88, 108 [1st Dept 2009], lv denied 15 NY3d 703 [2010]). The term "[w]rongful means" has been defined by the Court of Appeals as conduct amounting "to a crime or an independent tort" (Carvel Corp., 3 NY3d at 190). This definition was a refinement to the Court's previous description of the standard, which required "more culpable conduct on the part of the defendant" for the interference when there is no breach of an existing contract (NBT Bancorp, 87 NY2d at 621). The Carvel Court also defined " more culpable' conduct" as including the "wrongful means" described earlier by the Court in Guard-Life Corp. v Parker Hardware Mfg. Corp. (50 NY2d 183, 191 [1980]). The Carvel Court wrote, "Continuing to draw on the Restatement, we added in Guard-Life: Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract ([Restatement (Second) of Torts] § 768, Comment e; § 767, Comment c)" (id. at 191 [internal quotation marks omitted]).
The Carvel Court further recognized that an exception exists to the requirement of "a crime or an independent tort" for conduct engaged in " for the sole purpose of inflicting intentional harm on plaintiff[]' " (id. at 190, quoting NBT Bancorp, 215 AD2d 990, 990 [3d Dept 1995], affd 87 NY2d 614).
Here, plaintiff does not allege that the "wrongful means" amounted to any crime. Rather, plaintiff's cause of action is premised on the theory that defendant committed a "wrongful act" by way of an independent tort and/or that defendant acted solely for the purpose of inflicting intentional harm on her.
At the close of the proof, the court made a finding of what would constitute "wrongful means" when it instructed the jury that, for plaintiff to recover, she must prove that, inter alia, defendant "used wrongful means, in that she made fraudulent claims to [SED] about [plaintiff], misrepresented plaintiff's work performance to [SED], and that she persuaded and encouraged others to likewise make these claims to [SED], or, [plaintiff must prove that defendant's] actions [were] for the sole purpose of harming [plaintiff]." In other words, the court determined as a matter of law that the "wrongful means" employed by defendant were as described in the jury instruction and instructed the jury that its role was to determine whether defendant had engaged in the forms of the court-defined "wrongful means."
We recognize that the court, in doing so, adhered to the pattern jury instruction and the form jury verdict sheet provided for in PJI 3:57, along with the accompanying comment to that section. The comment states, in relevant part: "In most cases, the use of wrongful means,' i.e., conduct amounting to a crime or an independent tort, is an essential element of a cause of action for tortious interference with prospective economic relations [citing Carvel Corp.]. However, determining whether particular conduct amounts to a crime or an independent tort involves a legal analysis and is not an appropriate function for a jury. For that reason, the pattern charge asks the jury to consider only whether defendant actually engaged in the specific alleged acts constituting the claimed wrongful means.' Whether, as a matter of law, those acts rise to the level of wrongful means' remains a question of law for the court to decide" (2A NY PJI3d 3:57 at 604 [2018] [emphasis added]).
In our view, however, the comment's instruction is an erroneous statement of the law. As an initial matter, there is no support for the so-called threshold determination by a court "[w]hether, as a matter of law, [the alleged] acts rise to the level of wrongful means' " (id.). Rather, the determination whether particular facts constitute the independent tort is almost always a factual determination best left to the jury. Thus, while the court should evaluate the evidence to decide which independent tort(s) fits the fact pattern presented, the disputed underlying elements of the independent tort should still be charged to the jury. Indeed, this approach has been taken by at least one other state (see Korea Supply Co. v Lockheed Martin Corp., 29 Cal 4th 1134, 1153-1154, 63 P3d 937, 950 [2003]; Cal Jury Instr—Civ 7.82, 7-86.1).
In this case, defendant's attorney requested at trial that the underlying elements of the independent tort of defamation be charged to the jury. While the dissent assigns error to the court's independent finding of defamation, defendant no longer argues that defamation is the independent tort that should have been charged to the jury, but rather, argues that the elements of fraud should have been charged (see PJI 3:20, 3:20.1). Thus, to the extent that defendant no longer relies on the independent tort of defamation, any argument concerning that tort is deemed abandoned and should not be considered by this Court (see generally Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]). The dissent also erroneously relies on its own findings of fact when concluding that defendant's statements were either "pure opinion" or otherwise privileged, thereby negating an action for defamation. Those arguments were likewise not made by defendant on this appeal. Moreover, by making that determination, the dissent only perpetuates the error of the trial court. The jury should be given the opportunity to consider issues pertaining to the independent tort(s), and like the trial court, the dissent's determination deprives the parties of a jury's evaluation of the facts of the underlying tort(s) in the context of a proper instruction from the court. By determining as a matter of law the elements of the independent tort it unilaterally chooses to address, and by doing so upon a jury's verdict, the dissent exceeds the power of this Court to act in this case (see generally Cohen v Hallmark Cards, Inc., 45 NY2d 493, 498-499 [1978]). Thus, we agree with defendant that it was error for the trial court to refuse to provide a jury instruction that charged the disputed elements of an independent tort.
Additionally, inasmuch as we conclude that the court erred in its jury instructions with respect to "wrongful means," we cannot reach the sufficiency of the evidence on that element because the jury was not given the opportunity to consider the disputed issues of material fact with respect to the underlying tort. In other words, we cannot evaluate whether the jury was presented with sufficient evidence of "wrongful means" without taking away from the jury a factual determination of whether the tort was committed, and this Court is not permitted to perform such a task (see Killon v Parrotta, 28 NY3d 101, 108 [2016]). Nor can we evaluate the jury's verdict in light of the elements charged because, at least with respect to "wrongful means," it is undisputed that defendant objected to the court's charge, and thus, the instructions did not become the law of the case (cf. id. at 108-109).
We further conclude that the jury's finding that defendant acted with the sole purpose of inflicting intentional harm on plaintiff may have been affected by the court's erroneous instructions on wrongful means. The dissent concludes that, inasmuch as there was conflicting evidence on whether defendant's sole purpose was to harm plaintiff, the jury's verdict is "utterly irrational" and must be set aside as a matter of law (id. at 108). This conclusion, however, wrongfully assumes that the jury was required to accept the evidence of "other purposes" submitted by defendant and rejects what the dissent acknowledges is sufficient evidence of intent to harm plaintiff. It was within the jury's province to weigh the credibility of the evidence on that issue and, by reaching a different conclusion, the dissent is engaging in a weight of the evidence review, not an insufficiency analysis (see generally Cohen, 45 NY2d at 498-499). Thus, even under the dissent's weight review, the parties would be entitled to a new trial (see id. at 498).
In addition, a proper jury instruction with respect to the independent tort may have impacted the jury's measure of damages. Thus, for these reasons, we conclude that the proper remedy on this appeal is to reverse the judgment, grant defendant's motion to set aside the verdict and for a new trial.
Finally, defendant's contention that plaintiff, as an at-will employee, may not raise a [*3]tortious interference claim is unpreserved for review (see generally Ciesinski, 202 AD2d at 985) and without merit (see Guard-Life Corp., 50 NY2d at 194; Hobler v Hussain, 111 AD3d 1006, 1008 [3d Dept 2013]). We have considered defendant's remaining contentions and conclude that they are without merit.
All concur except Smith, J.P., and Peradotto, J., who dissent and vote to reverse in accordance with the following memorandum: We agree with defendant that the evidence is legally insufficient to support the verdict, which awarded plaintiff damages on the cause of action for tortious interference with prospective economic advantage, and thus we would reverse the judgment, grant defendant's motion to set aside the verdict based on legally insufficient evidence, and dismiss the complaint. Consequently, we respectfully dissent.
Defendant initially contends that plaintiff, as an at-will employee, may not maintain a cause of action for tortious interference with prospective economic advantage, and that the cause of action must be dismissed on that ground. That contention is raised for the first time on appeal, however, and therefore is not preserved for our review (see Matter of Small Smiles Litig., 125 AD3d 1531, 1532 [4th Dept 2015]; Crandall v Wright Wisner Distrib. Corp., 66 AD3d 1515, 1517 [4th Dept 2009]).
Nevertheless, we agree with defendant that the evidence is legally insufficient. It is well settled that, in order to succeed on a claim that the evidence at a trial was legally insufficient to support a verdict in favor of a plaintiff, the defendant must establish " that there [was] simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (Winiarski v Harris [appeal No. 2], 78 AD3d 1556, 1557 [4th Dept 2010], quoting Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; see Mazella v Beals, 27 NY3d 694, 705 [2016]).
Here, the verdict was in favor of plaintiff on her cause of action for tortious interference with prospective economic advantage. It is well established that, "where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior . . . Where[, as here], there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant" (NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 621 [1996]; see Carvel Corp. v Noonan, 3 NY3d 182, 189-191 [2004]). Thus, in order to make out a prima facie case on this cause of action, plaintiff was required to establish that "the defendant directly interfered with a third party and that the defendant either employed wrongful means or acted for the sole purpose of inflicting intentional harm on plaintiff[]" (Posner v Lewis, 18 NY3d 566, 570 n 2 [2012] [internal quotation marks omitted]). "Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone" (Carvel Corp., 3 NY3d at 191 [internal quotation marks omitted]; see NBT Bancorp, 87 NY2d at 624; Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 191 [1980]; KAM Constr. Corp. v Bergey, 151 AD3d 1706, 1707 [4th Dept 2017]).
The evidence that plaintiff submitted at trial is legally insufficient to meet those requirements. With respect to the prong of the standard that allows recovery where the defendant's sole purpose was to inflict harm on the plaintiff, we agree with plaintiff that there was sufficient evidence from which the jury could have concluded that defendant acted with the intent to injure plaintiff. Nevertheless, it is undisputed that defendant was the head of a union that represented employees under plaintiff's supervision, and thus defendant's duties required that she address grievances between those employees and plaintiff, by bringing those grievances to plaintiff's supervisors where necessary. All of the allegations that defendant presented to investigators from the New York State Education Department involved plaintiff's actions in the workplace, and were supported by statements made by other employees (see Hoesten v Best, 34 AD3d 143, 158-159 [1st Dept 2006]). Thus, the evidence is insufficient to support this cause of action inasmuch as the evidence establishes that the statements of defendant and the other employees to plaintiff's supervisors amounted to no more than "relating their legitimate concerns about [plaintiff]'s ability to perform the job" (Moulton Paving, LLC v Town of Poughkeepsie, 98 AD3d 1009, 1013 [2d Dept 2012]). Consequently, no cause of action "lies for tortious interference with prospective economic advantage because, as noted, [plaintiff] has no tenable [*4]claim that [defendant] acted for the sole purpose of harming her" (Estate of Steingart v Hoffman, 33 AD3d 465, 466 [1st Dept 2006]).
Furthermore, we agree with defendant that the evidence is insufficient to establish that she acted by wrongful means. Plaintiff's contention that defendant engaged in wrongful means, to wit, defamation, to bring about her termination is unsupported by the evidence. Even assuming, arguendo, that defamation may constitute the requisite wrongful means to support this cause of action, we conclude that the statements at issue were either "pure opinion" that are not actionable because "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation" (Mann v Abel, 10 NY3d 271, 276 [2008], cert denied 555 US 1170 [2009]; see Davis v Boeheim, 24 NY3d 262, 269 [2014]), or were encompassed by the "qualified privilege where the communication is made to persons who have some common interest in the subject matter" (Foster v Churchill, 87 NY2d 744, 751 [1996]; see Wilcox v Newark Val. Cent. Sch. Dist., 107 AD3d 1127, 1129 [3d Dept 2013]). Furthermore, although "[t]he shield provided by a qualified privilege may be dissolved if plaintiff can demonstrate that defendant spoke with malice' " (Liberman v Gelstein, 80 NY2d 429, 437 [1992]), "[i]f the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff. Thus, a triable issue is raised only if a jury could reasonably conclude that malice was the one and only cause for the' " allegedly defamatory statements (id. at 439). For the reasons discussed, the evidence is legally insufficient to establish that defendant's one and only purpose was to harm plaintiff, and thus the evidence was not legally sufficient to support the verdict.
We also respectfully disagree with the majority's conclusion that there was an error in the jury instructions with respect to the issue of wrongful means, and that the error infected the jury's review of the court's instructions on the issue of sole purpose. In light of the insufficiency of the evidence with respect to the issues of sole purpose and wrongful means, "any possible error resulting from the instruction given was rendered harmless" (Mossidus v Hartley, 106 AD2d 805, 806 [3d Dept 1984]; see Askin v City of New York, 56 AD3d 394, 395 [1st Dept 2008], lv dismissed 12 NY3d 769 [2009]; see also Browne v Prime Contr. Design Corp., 308 AD2d 372, 373 [1st Dept 2003], lv denied 2 NY3d 702 [2004]; see generally Padilla v Freelund, 7 AD3d 258, 259 [1st Dept 2004]).
Entered: June 29, 2018
Mark W. Bennett
Clerk of the Court