[728 NYS2d 464]

Michael Odell, Respondent-Appellant, v 704 Broadway Condominium, et al., Appellants-Respondents.

First Department, July 26, 2001

**APPEARANCES OF COUNSEL**

*John M. Cilmi* of counsel (*Cilmi & Associates, P. L. C. C.,* attorneys), for respondent-appellant.

*Scott S. Greenspun* of counsel (*Braverman & Associates, P. C.,* attorneys), for appellants-respondents.

## OPINION OF THE COURT

SULLIVAN, P. J.

In or about January 1999, a broker showed plaintiff space on the ninth floor of a condominium located at 704 Broadway in Manhattan, a former loft building, consisting of 10 floors, each a single unit containing 4,804 square feet, and a penthouse. By letter of January 28, 1999 to Jonathan Leitersdorf, president of the condominium board of managers, the broker, at plaintiff's request, advised the board that "potential purchasers" had inquired about possible modifications to the ninth-floor unit, including a balcony extending from the unit's east exterior wall. At the time, neither that unit nor any other in the building had a balcony.

The letter, which acknowledged that the alterations would require approval from the appropriate governmental agencies and that the purchaser, prior to any alterations, would have to

submit his architectural plans to the board for approval in accordance with the condominium's bylaws, asked that the board agree "in concept" to the modifications. As president of the condominium's board of managers, Leitersdorf signed the letter below the statement "Agreement to above" and returned it to plaintiff and his broker.

Relying on the board's acknowledgment of the proposed modifications and consent thereto, plaintiff purchased the unit for $1,725,000 in or about February 1999. Both the condominium and the board, defendants in this action seeking a declaration that plaintiff is entitled to complete the modifications already commenced, deny that Leitersdorf ever consulted with either of the two other board members concerning plaintiff's balcony concept prior to this time or until June 1999.

Plaintiff engaged the services of an architect to design plans for the modification and file an application with the New York City Department of Buildings for its approval. The exterior modifications included the east wall balcony, the construction of which would require the demolition of a portion of the wall and its reconstruction approximately eight feet in from its previous location, thereby creating an outdoor alcove measuring 8 by 25 feet. The balcony would then extend approximately six feet from the alcove area, creating 138 square feet of balcony area. In addition to the east wall balcony, the plans included the creation of five terraces off the unit's west wall, each measuring approximately 18 square feet. In his capacity as president of the board, Leitersdorf signed the Department of Buildings application.

According to plaintiff, after acquiring title and through May 1999, he had numerous conversations with Leitersdorf and a representative of the condominium's managing agent with regard to the alterations, as well as similar subsequent conversations with an architect representing the condominium. At the board's request, plaintiff transmitted a complete set of the modification plans and specifications to Leitersdorf's assistant for review. On May 14, 1999, the Department of Buildings approved the plans for plaintiff's modifications.*

On May 21, 1999, plaintiff wrote to Leitersdorf, as president of the board, outlining his various submissions and efforts to obtain board approval and requesting "[his] signature as Presi-

---

* By letter of June 8, 1999, the New York City Landmarks Preservation Commission advised the board that it had no objections to the planned modifications, thereby completing the process of acquiring government approval of the modifications.

dent of the Board, indicating that the submitted work has been reviewed and approved." As president of the board, Leitersdorf signed plaintiff's May 21, 1999 letter under the legend, "The above accepted and agreed to." Relying on the foregoing approvals, plaintiff engaged the services of a contractor, who began the necessary construction.

On July 14, 1999, at the board's request and notwithstanding the formal consent he believed he had already received, plaintiff and his architect met with the board for the purpose of reviewing his plans. Within hours of the meeting, plaintiff received a letter from the managing agent, dated July 14, 1999, advising him that the board had voted to reject that portion of the plan calling for the construction of the balcony on the east wall. According to plaintiff, the board objected to the balcony because it increased the size of plaintiff's unit and created a "unique" amenity not found in the other units. The board approved the other alterations, including the alcove and five terraces off the west wall.

At the time of the receipt of the July 14, 1999 letter, plaintiff's contractor had completed 50% of the interior alterations and had begun the demolition of the exterior east wall in preparation of the balcony construction. After consulting with counsel, plaintiff decided to continue with the alterations and commenced this action against the condominium and the board of managers. His complaint asserts three causes of action, one for declaratory relief, a second based on equitable estoppel and a third alleging breach of fiduciary duty and negligent misrepresentation, and seeks $3,500,000 in damages.

After joinder of issue, defendants moved for summary judgment, asserting that plaintiff had not complied with Real Property Law § 339-k, which, they contended, required the eighth-floor unit owner's consent to the alteration. Defendants claimed that the board did not know of the plans for the east wall balcony until June 1999, when the eighth-floor unit owner, board member Carol Schrager, who was in the process of selling her unit to a well-known movie personality, learned of the planned construction and contacted the other members of the board to object. Both Schrager and the subsequent eighth-floor unit purchaser submitted affidavits in support of the motion, both averring that they had not consented to the construction of the balcony. Plaintiff cross-moved for summary judgment based on the board's consent and on powers of attorney provided by Schrager and the subsequent purchaser of her eighth-floor unit granting broad powers to the board members.

The IAS court denied both motions, holding, *inter alia*, that the subsequent purchaser of the eighth-floor unit was a necessary party. The court also expressed the view that further discovery was necessary to determine why Leitersdorf did not support plaintiff's cross motion with an affidavit, and voiced its suspicions of the transaction in view of the fact that Leitersdorf, speaking for the board, had signed documents approving the balcony while the other board members stated that they had never given such approval. Both plaintiff and defendants appeal.

The only issue raised by the first and second causes of action was whether plaintiff had the actual approval of the board or could reasonably rely on Leitersdorf's approvals and whether Real Property Law § 339-k required plaintiff, in addition to securing board approval, to obtain the approval of the eighth-floor unit owner. Defendants argue that plaintiff never obtained the board's consent to construct the balcony, as the condominium's bylaws require, and that the consent of Leitersdorf, acting independently, could not bind the board. While it may be true, as alleged, that Leitersdorf acted without consulting the other members of the board, it was not, as the IAS court implied, plaintiff's obligation to show that Leitersdorf did, in fact, consult the board. Not even defendants argue that plaintiff, as part of his case, was required to submit an affidavit from Leitersdorf attesting to the fact that he had obtained the approval of the other board members. Plaintiff offered a number of documents signed by Leitersdorf in his capacity as board president signifying the board's approval of the proposed construction, including the January 28, 1999 letter consenting "in concept," subject to governmental approval, to the balcony construction, the Department of Buildings application and the May 21, 1999 letter indicating the board's approval after review of the final plans and specifications.

On the issue of whether plaintiff, by obtaining Leitersdorf's consent, as president, secured the approval of the board, several well-settled principles bear mentioning. There is a general presumption that the president of a corporation is clothed with the powers which, of necessity, inhere in the position of chief executive. (*See, A & M Wallboard v Marina Towers Assocs.*, 169 AD2d 751, 752, *lv denied* 78 NY2d 854; 14A NY Jur 2d, Business Relationships § 613.) "The president or other general officer of a corporation has power, prima facie, to do any act which the directors could authorize or ratify. * * * The true test of his authority to bind the corporation is * * *

whether, at the time, he is engaged in the discharge of the general duties of his office, and in the business of the corporation." (*Hastings v Brooklyn Life Ins. Co.*, 138 NY 473, 479.) In this regard, the condominium's bylaws expressly grant the president "all of the general powers and duties which are incident to the office of president of a stock corporation organized under the Business Corporation Law of the State of New York."

Moreover, plaintiff could reasonably rely on the apparent authority of Leitersdorf, as board president, to approve the construction. "The rule is well settled that it will ordinarily be presumed that a president of a corporation has the power to make contracts pertaining to the business of the corporation and coming within the apparent scope of his authority." (*Spitzer v Born, Inc.*, 194 App Div 739, 740-741.) A president's apparent authority exists regardless of whether the president has actual authority to carry out such acts. (*Wishnow v Kingsway Estates*, 26 AD2d 61, 63.) Furthermore, a president of a corporation has apparent authority to act within the general scope of his office and such acts are binding on the corporation against one who does not know of any limitation or the president's true authority. (*See, Traitel Marble Co. v Brown Bros.*, 159 App Div 485, 486-487.) Thus, Leitersdorf, as president of the board, had the power, whether actual, implied or apparent, to approve of the proposed construction and to bind the entire board.

Defendants argue that Leitersdorf lacked such authority because article IV, section 7 of the bylaws requires that "[a]ll agreements, contracts, deeds, leases, checks or other instruments of the Condominium shall be executed by any two (2) officers of the Condominium or by such other person or persons as may be designated by the Board of Managers." Urging upon us this Court's reasoning in *Traitel Marble Co. v Brown Bros.* (*supra*, 159 App Div at 487) that "persons dealing with the officers and agents of a corporation are bound to take notice that their powers are derived from statutes, by-laws, or usages which more or less define the extent of their authority," they maintain that article IV, section 7's requirement was never satisfied with respect to the balcony. The point is not well taken. Approval of an alteration to the condominium, be it to common area or to a unit itself, does not constitute an agreement, contract, deed, lease, check or other instrument of the condominium as those terms are used in the bylaws.

Furthermore, article IV, section 7 provides for the execution of such instruments by any two officers "or by such other person or persons as may be designated by the Board of Managers."

Thus, it was well within the board's authority to designate the president as the person to approve the construction plan. The bylaws do not require that such designation be in writing or on notice. Since such designation could have been granted informally, plaintiff would have no reason to know, if such be the case, that Leitersdorf was without authority to consent to the construction of the balcony.

■ Defendants also argue that, quite apart from Leitersdorf's authority to speak for the board in granting approval of the proposed construction, consent of the unit owner affected by the alteration, as required by Real Property Law § 339-k, was never obtained. Real Property Law § 339-k provides "No unit owner shall do any work which would jeopardize the soundness or safety of the property, reduce the value thereof or impair any easement or hereditament, nor may any unit owner add any material structure or excavate any additional basement or cellar, without in every such case the consent of all the unit owners affected being first obtained."

Plaintiff argues that the consent required by Real Property Law § 339-k was obtained. He contends that the board, acting through Leitersdorf, consented for the eighth-floor unit owner under a broad delegation of authority conferred by a power of attorney. The declaration to the condominium plan involved here requires each owner, as a condition to the purchase of a unit, to execute a written power of attorney delegating substantial power to the board to act on his or her behalf. This power of attorney, executed by the owner of the eighth-floor unit when plaintiff purchased his unit and her successor, who took title in August 1999, after the operative events herein, provides as follows:

> "The undersigned * * * (does) (do) hereby irrevocably nominate, constitute and appoint the persons who may from time to time constitute the Condominium Board, true and lawful attorneys-in-fact for the undersigned * * * with power of substitution, in their own names, as members of the Condominium Board of Managers * * * (2) to execute, acknowledge and deliver * * * (b) any consent, covenant, restriction, easement, or declaration, or any amendment thereto, affecting the Condominium or the Common Elements, that the Condominium Board of Managers deems necessary or appropriate."

The power of attorney thus confers authority on "the persons who may from time to time constitute the Condominium

Board," not the board, qua board, to give the necessary or appropriate consent to any matter affecting the condominium or the common elements. It follows from the requirement of the consent of the board members that the power of attorney may not be acted upon by any individual member, even the president, acting independently. Thus, since only Leitersdorf consented to the proposed modifications, the power of attorney was not properly exercised here. In view of this determination, we agree with the IAS court's conclusion that the eighth-floor unit owner should be joined as a necessary party. (*See*, CPLR 1001 [a].) Since the power of attorney was not properly exercised, we need not reach the issue, although not argued, of whether a delegation of authority under a power of attorney, which, as noted, each unit owner is required to provide, with respect to the right statutorily conferred by Real Property Law § 339-k would offend public policy.

Even though we conclude that the consent of the owner of the eighth-floor unit was not obtained, summary judgment in favor of defendants is still not warranted because of the existence of issues of fact as to whether the proposed balcony is a "material structure" within the meaning of the statute, which nowhere defines the term. While defendants claim that the balcony, only 18 inches above three large bedroom windows in the eighth-floor unit, would block light and cause a loss of view, plaintiff insists that the eighth floor will incur only "some loss of light," primarily, in May, June and July, and that the loss of light during the remainder of the year will be de minimis. Thus, this issue, of threshold significance, cannot be resolved, either way, as a matter of law.

As to plaintiff's third cause of action, for breach of fiduciary duty, it has not been established that the board acted in bad faith. At most, all that has been shown is that Leitersdorf failed to keep the board informed of his actions. Nor are defendants entitled to a dismissal of this cause of action. Although, as they correctly argue, the board owed no duty to plaintiff before his purchase of the condominium unit, it did owe plaintiff a fiduciary duty after he bought the unit.

We have examined the other arguments for affirmative relief and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Louis York, J.), entered June 13, 2000, which denied the motion and cross motion for summary judgment, should be affirmed, without costs or disbursements.

Motion seeking leave to strike portions of reply brief granted.

MAZZARELLI, ELLERIN, LERNER and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered June 13, 2000, affirmed, without costs or disbursements. Motion seeking leave to strike portions of reply brief granted.