Bruning v Pharney Group LLC (2025 NY Slip Op 51502(U))

[*1]

Bruning v Pharney Group LLC

2025 NY Slip Op 51502(U)

Decided on September 24, 2025

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 24, 2025
Supreme Court, Westchester County

Calvin J. Bruning, Jr., as Administrator of the 
 Estate of Judy Mae Bruning, a/k/a Judy Bruning, Plaintiff,

against
Pharney Group LLC d/b/a Tarrytown Rehabilitation and Nursing Center, 
 ABC Corporation and ABC Partnership, Defendants.

Index No. 59998/2022

Napoli Shkolnik PLLC
Tia Garcia, Esq.
Attorney for plaintiff
Nathan & Kamionski LLP
Joseph Gutmann, Esq.
Attorney for defendant

Robert S. Ondrovic, J.

In an action for, inter alia, negligence and wrongful death in connection with plaintiff's decedent's treatment and care at the nursing home operated by defendant Tarrytown Rehabilitation and Nursing Center ("defendant") prior to the decedent's May 1, 2020 death during the height of the COVID-19 pandemic, defendant moves for an Order granting it leave to renew and/or reargue its motion for summary judgment. The following papers were considered in connection with defendant's motion:
[*2]PAPERS
NUMBERED
Notice of Motion, Gutmann Affirmation, Exhibits 1-12, Memorandum of Law in Support 1 — 15
Garcia Affirmation in Opposition, Memorandum of Law in Opposition 16 — 17
Gutmann Affirmation in Reply, Exhibit A, Reply Memorandum of Law 18 — 20
Relevant Background
This action was commenced on April 28, 2022 by the filing of a Summons and Complaint by plaintiff Calvin J. Bruning, Jr. ("plaintiff"), as administrator of the estate of his aunt, Judy Mae Bruning (the aforementioned "decedent") (see NYSCEF Doc. No. 1). In sum and substance, the Complaint alleges that the decedent was a resident of defendant, which is a nursing home facility located in Tarrytown, from March 14, 2020 until April 25, 2020 (see NYSCEF Doc. No. 1 at ¶¶ 1-189). It alleges that the decedent contracted the COVID-19 virus during her time at defendant's facility, and was transferred to Phelps Memorial Hospital on April 25, 2020 and died as a result of COVID-19 on May 1, 2020 (id.). The Complaint alleges that the decedent died as a result of defendant's negligence in failing to protect its residents from the COVID-19 virus during and throughout the outbreak of the pandemic in the early Spring of 2020 (id.). 
Based upon the foregoing allegations as detailed in 189 paragraphs in the Complaint, plaintiff asserts: (1) a first cause of action pursuant to New York Public Health Law §§ 2801-d and 2803-c; (2) a second cause of action for negligence prior to the COVID-19 pandemic; (3) a third cause of action for negligence during the COVID-19 pandemic; (4) a fourth cause of action for negligence per se; (5) a fifth cause of action for conscious pain and suffering; (6) a sixth cause of action for wrongful death; (7) a seventh cause of action for gross negligence; (8) an eighth cause of action for nursing home malpractice resulting in wrongful death; and (9) a ninth cause of action for nursing home malpractice resulting in conscious pain and suffering (id. at ¶¶ 190-301).
On January 4, 2024, defendant moved (seq. no. 2)[FN1]
pursuant to CPLR 3211(a)(7) for an Order dismissing this action for failure to state a cause of action (see NYSCEF Doc. Nos 55-64), which motion was opposed by plaintiff (see NYSCEF Doc. Nos. 65-85). The Court heard oral argument on January 30, 2024, and rendered a Decision and Order on the record in which it denied defendant's motion and directed the parties to proceed with discovery (see NYSCEF Doc. No. 86). In doing so, the Court noted that it was hesitant to dismiss plaintiff's Complaint in that procedural posture, particularly given the liberal pleading standards governing CPLR 3211(a)(7) (id.). However, the Court emphasized that defendant may very well be shielded from liabilitypursuant to the New York Emergency or Disaster Treatment Protection Act, NY Public Health Law Article 30-D, §§ 3080-3082 (the "EDTPA"), which provides civil immunity for claims relating to healthcare services rendered in response to the COVID-19 pandemic (id.). In relevant part, the Court stated:
The Court would tend to agree that there should be immunity recognized in this particular case and ultimately there may well be on a summary judgment motion . . . [Defendant] may [*3]well be successful in the motion for summary judgment. I just think it would be inappropriate at this stage, under the current case law, to say that the plaintiff can't proceed with discovery. So motion sequence number two is denied in its entirety (id. at pp. 7-8).
On February 10, 2025, a Trial Readiness Conference was held in which counsel reported that discovery had been completed. As such, the Court issued a Trial Readiness Order on that same date, which stated that the matter had been certified as ready for trial, and which directed plaintiff to file a Note of Issue within ten days thereof (see NYSCEF Doc. No. 113). It further provided that any summary judgment motions must be made within 60 days following the filing of the Note of Issue (id.). On February 20, 2025, plaintiff timely filed a Note of Issue and Certificate of Readiness for Trial (see NYSCEF Doc. No. 114).
On April 20, 2025, defendant timely moved (seq. no. 4)[FN2]
pursuant to CPLR 3212 for an Order awarding defendant summary judgment dismissing the Complaint as a matter of law on the principal ground that defendant is shielded from immunity pursuant to the EDTPA (see NYSCEF Doc. Nos. 117-137). Plaintiff opposed the motion, arguing, inter alia, that defendant's motion should be denied for failure to comply with the recently enacted provisions of CPLR 2106, as defendant's moving affirmations failed to expressly state that they were made "under the penalties of perjury under the laws of New York, which may include a fine or imprisonment" (see NYSCEF Doc. Nos. 142-144). By Decision and Order dated July 10, 2025 (the "July 10 Order"), the Court denied defendant's motion for failure to comply with CPLR 2106 (see NYSCEF Doc. No. 147). The next day, on July 11, 2025, defendant furnished its reply papers in which it submitted five "corrected affirmations" that were substantively identical to defendant's moving affirmations, but which included the requisite language pursuant to CPLR 2106 (see NYSCEF Doc. Nos. 151-172). The Court thereafter issued a second Decision and Order dated July 15, 2025 (the "July 15 Order," and together with the July 10 Order, the "July 2025 Orders"), in which the Court reiterated that it was denying defendant's motion for failure to comply with CPLR 2106 (see NYSCEF Doc. No. 175). The Court stated:
Whereas the "affirmations" fail to comply with CPLR 2106, they may not be considered by the Court on this motion. See, e.g., Great Lakes Ins. SE v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n Inc., 228 AD3d 429, 429, 213 N.Y.S.3d 286, 287 (1st Dept. 2024) ("[defendant]'s affirmation, which he submitted to support his claim that the court lacked personal jurisdiction, was inadmissible as it did not contain the language required by CPLR 2106"). As a result of the failure of defendant to submit proper and admissible affirmations, defendant has failed to demonstrate its prima facie entitlement to summary judgment. Thus, the burden does not shift to the plaintiff and the Court need not consider the merits of the opposition papers nor consider any reply papers that might be submitted irrespective of the timeliness of such reply papers. (id.).
Defendant now moves (seq. no. 5) for an Order pursuant to CPLR 2221 granting defendant leave to renew and/or reargue the July 2025 Orders that collectively denied defendant's prior motion for summary judgment (see NYSCEF Doc. Nos. 177-193). In support of its motion, defendant submits an affirmation from its counsel, which summarizes the procedural history of this action and which attaches copies of relevant documents (see NYSCEF Doc. No. 178). The documents annexed to counsel's affirmation include, inter alia, copies of the aforementioned five corrected affirmations that had been submitted with defendant's summary judgment reply papers, which are substantively identical to defendant's moving affirmations but which were amended to include the requisite language pursuant to CPLR 2106 (see NYSCEF Doc. Nos. 180-193). Such corrected affirmations include: (1) an affirmation from Lisa Kaplewicz ("Kaplewicz") based upon Kaplewicz's personal knowledge as the Corporate Director of Clinical Services of non-party Personal Healthcare, which provides management and consulting services for various nursing homes, including defendant; (2) an affirmation from Jennifer Mazzetti ("Mazzetti") based upon Mazzetti's personal knowledge as defendant's Director of Nursing during the operative timeframe of March to April of 2020; (3) an affirmation from Kirsty Biondo ("Biondo") based upon Biondo's personal knowledge as defendant's current Director of Nursing, who was a social worker for defendant in the Spring of 2020; (4) an affirmation from Neil Eisikowitz ("Eisikowitz") based upon Eisikowitz's personal knowledge as defendant's Administrator during the operative timeframe of March to April of 2020; and (5) an affirmation from defendant's counsel (collectively, the "Corrected Affirmations") (see NYSCEF Doc. Nos. 180-193).
Defendant also submits a memorandum of law, which sets forth its legal arguments in support of defendant's motion for leave to renew and/or reargue the July 2025 Orders (see NYSCEF Doc. No. 179). Specifically, defendant first argues that the Court should grant leave to renew defendant's summary judgment motion pursuant to CPLR 2221(e) because the Corrected Affirmations constitute new evidence that the Court did not consider at the time that it issued the July 2025 Orders (id.). Defendant contends that because the Corrected Affirmations included language in compliance with CPLR 2106, and because plaintiff is not prejudiced by defendant's submission with its reply papers of the Corrected Affirmations that are substantively identical to defendant's moving affirmations, the Court should have considered the substance of those affirmations and addressed the merits of defendant's summary judgment motion (id.). Defendant further asserts that in response to plaintiff's opposition papers, which had emphasized the failure to comply with CPLR 2106, defendant had been preparing to furnish the Corrected Affirmations with its reply papers, but that the Court's July 10 Order denied defendant's summary judgment motion on procedural grounds before defendant's deadline to file reply papers in further support thereof (id.). Therefore, defendant argues that it should be granted leave to renew its summary judgment motion pursuant to CPLR 2221(e), and that upon renewal the Court should award defendant summary judgment dismissing the Complaint as a matter of law based upon defendant's EDTPA immunity (id.).
Defendant also contends that the Court should alternatively grant leave to reargue defendant's summary judgment motion pursuant to CPLR 2221(d) because the Court overlooked the Corrected Affirmations in the July 2025 Orders, and particularly in the July 15 Order, which was issued after defendant had filed the Corrected Affirmations (id.). Defendant respectfully asserts that the Court mistakenly held that the procedural defect in defendant's moving papers warranted denial of summary judgment, and that the Court should have instead accepted the Corrected Affirmations and reached the merits of defendant's summary judgment motion. Accordingly, defendant argues that [*4]it should be granted leave to reargue its summary judgment motion pursuant to CPLR 2221(d), and that upon reargument the Court should award defendant summary judgment dismissing the Complaint as a matter of law based upon defendant's EDTPA immunity (id.).
In opposition to defendant's motion, plaintiff submits an affirmation from his counsel, in which counsel recites the procedural history of this lawsuit and summarizes plaintiff's arguments as set forth in his accompanying memorandum of law (see NYSCEF Doc. No. 197).
In plaintiff's memorandum of law, he first argues that defendant's motion for renewal should be denied pursuant to CPLR 2221(e) (see NYSCEF Doc. No. 198). In particular, plaintiff contends that defendant has offered no reasonable justification for its failure to comply with CPLR 2106 when it moved for summary judgment in April 2025, as the CPLR 2106 requirements were amended in 2023 and implemented on January 1, 2024, which was more than one year prior to defendant's summary judgment motion (id.). Plaintiff asserts that there is also no evidence that defendant was planning to furnish the Corrected Affirmations with its reply papers at the time that the Court issued the July 10 Order, and that defendant first filed such affirmations on the next day, i.e., on July 11, 2025 after its counsel had received the July 10 Order (id.). As such, plaintiff concludes that defendant's renewal motion should be denied pursuant to CPLR 2221(e) (id.).
Plaintiff also argues that defendant's motion for leave to reargue should be denied pursuant to CPLR 2221(d) (id.). Plaintiff contends that defendant has failed to demonstrate that the Court overlooked or misapprehended the facts or the law when it issued the July 2025 Orders denying defendant's summary judgment motion (id.). Rather, plaintiff asserts that the Court correctly rejected defendant's moving submissions as non-compliant with CPLR 2106, as the failure to adhere to CPLR 2106 requirements is neither harmless nor ministerial (id.). Therefore, plaintiff argues that defendant's reargument motion should be denied pursuant to CPLR 2221(d) (id.).
Plaintiff further contends that even if the Court were to grant renewal and/or reargument of the July 2025 Orders, defendant's submissions, including the Corrected Affirmations, do not establish prima facie entitlement to summary judgment dismissing the Complaint as a matter of law (id.). As such, plaintiff concludes that even if the Court considers the underlying merits of defendant's summary judgment motion, such motion should be denied in its entirety (id.). 
In further support of its motion, defendant submits a reply affirmation from its counsel, in which counsel avers as to the timing of defendant's submission of reply papers in further support of its summary judgment motion in July of 2025 (see NYSCEF Doc. No. 201).
In defendant's reply memorandum of law, it first argues that plaintiff has baselessly asserted that the Corrected Affirmations should not be considered by this Court, and that plaintiff cited no relevant authority in support of that meritless position (see NYSCEF Doc. No. 203). Defendant further contends that it had been preparing the Corrected Affirmations at the time that the Court issued the July 10 Order denying defendant's summary judgment motion for failure to comply with CPLR 2106, and that defendant furnished the Corrected Affirmations with its summary judgment reply papers that were filed less than 24 hours after the Court's issuance of the July 10 Order (id.). As such, defendant asserts that it worked diligently to correct the procedural defect in the original affirmations by way of filing the Corrected Affirmations with defendant's summary judgment reply papers, and that plaintiff cannot be deemed to have suffered any prejudice in connection with same (id.). Defendant argues that based upon the foregoing, its motion for leave to renew the July 2025 Orders should be granted pursuant to CPLR 2221(e), and that upon renewal, defendant should be awarded summary judgment dismissing the Complaint as a matter of law (id.). Defendant concludes by contending that alternatively, its motion for leave to reargue should be granted pursuant to CPLR [*5]2221(d), and that upon reargument, its summary judgment motion should be granted in its entirety (id.).
Motion for Leave to Renew and/or Reargue
CPLR 2221(e) provides that a motion for leave to renew: "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination" (see CPLR 2221[e]) (emphasis added). It further provides that a motion for leave to renew "shall contain reasonable justification for the failure to present such facts on the prior motion" (id.).
"Therefore, a motion for leave to renew is the appropriate vehicle for seeking relief from a prior order based on a change in the law" (U.S. Bank N.A. v Mongru, 2025 NY App. Div. LEXIS 4825, *5 [2d Dept Aug. 27, 2025], quoting JPMorgan Chase Bank, N.A. v Eze, 232 AD3d 865, 866 [2d Dept 2024]). Indeed, merely "a clarification of existing law may in some circumstances suffice to constitute a change in law for purposes of a motion to renew" (U.S. Bank N.A. v Zapata, 218 AD3d 623, 625 [2d Dept 2023], citing Dinallo v DAL Elec., 60 AD3d 620, 621 [2d Dept 2009] (stating that "[a] clarification of the decisional law is a sufficient change in the law to support renewal"); see also Matter of Martin v City of New York, 103 AD3d 412, 412 [1st Dept 2013] (finding that "[a]lthough this Court's decision . . . did not change the law, it undermined the primary basis on which respondent had denied petitioner's application for a master plumber's license, i.e., that petitioner did not show that he had been directly employed by a master plumber. Thus, Supreme Court properly granted petitioner's motion to renew")).
Having reviewed the parties' submissions and conducted its own research, the Court determines that there has been a change in the law that would change the prior determination set forth in the July 2025 Orders, such that renewal is warranted pursuant to CPLR 2221(e). 
By way of relevant background, CPLR 2106 was amended as of January 1, 2024 to require that affiants submitting an affirmation aver "under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true . . ." (see CPLR 2106) (emphasis added). Notwithstanding this requirement, the five affiants that submitted moving affirmations in connection with defendant's summary judgment motion each averred as to the truth of their respective affirmations "under penalty of perjury," but failed to expressly aver that such penalty "may include a fine or imprisonment" as required by CPLR 2106 (see NYSCEF Doc. Nos. 128-132).
At the time that the Court issued the July 2025 Orders, appellate case law regarding the newly-enacted CPLR 2106 requirement was minimal, and provided no clear guidance regarding whether a movant could cure a CPLR 2106 defect in its reply papers. Instead, case law from various Departments of the Appellate Division merely stated that a movant's failure to comply with CPLR 2106 rendered the moving submissions "inadmissible," such that they should be rejected (see, e.g., Matter of Rosenberg, 2024 NY App. Div. LEXIS 6760, *1 [3d Dept Dec. 19, 2024] (denying a motion for failure to comply with CPLR 2106 and stating that "respondent has failed to submit his motion in admissible form"); Beier v Giglio, 230 AD3d 733, 734 [2d Dept 2024] (holding that due to an expert's failure to comply with CPLR 2106 in connection with defendant's summary judgment motion, the "expert report submitted by [defendant] in support of his motion was insufficient to meet his prima facie burden"); Great Lakes Ins. SE v American S.S. Owners Mut. Protection & Indem. Assn. Inc., 228 AD3d 429, 429 [1st Dept 2024] (affirming the denial of summary judgment and [*6]stating that defendant's "affirmation, which he submitted to support his claim that the court lacked personal jurisdiction, was inadmissible as it did not contain the language required by CPLR 2106"); Sanchez-Trujillo v Beach 119, LLC, 225 AD3d 726, 726 [2d Dept 2024] (finding that "[t]he report of the plaintiff's expert was not in admissible form, and the plaintiff offered no excuse for failing to tender the report in admissible form (see CPLR 2106 )").
As such, although defendant submitted the Corrected Affirmations with its July 11, 2025 reply papers (see NYSCEF Doc. Nos. 163-167), the Court in issuing the July 2025 Orders was required to follow the Appellate Division's aforementioned case law. Accordingly, the Court cited Great Lakes Ins. SE, 228 AD3d at 429, and denied summary judgment on the ground that the original moving affirmations failed to comply with CPLR 2106 and were thus "inadmissible" (see NYSCEF Doc. Nos. 147, 175).
Critically, however, on August 6, 2025 — several weeks after the Court had issued the July 2025 Orders — the Appellate Division, Second Department issued a highly pertinent decision in Kallo v Kane St. Synagogue, 2025 NY App. Div. LEXIS 4633, **2-4 (2d Dept Aug. 6, 2025). In Kallo, the Supreme Court had denied defendants' CPLR 3211 motion to dismiss the Complaint on the ground that defendants' moving affirmation failed to contain the language required by CPLR 2106, despite that defendants had submitted an affirmation in reply that corrected this defect and set forth the language required by CPLR 2106. The Appellate Division reversed the Supreme Court, stating in relevant part as follows:
Although the declaration was signed by Bell under the penalties of perjury, it was not notarized, and thus was not in admissible form under the law in effect at the time (see CPLR 2106) . . .
However, CPLR 2001 permits a court to disregard a party's mistake, omission, defect or irregularity if a substantial right of a party is not prejudiced. A court may therefore consider materials submitted in reply that serve to correct procedural, technical, and/or ministerial defects in a party's moving papers by exercising its discretion pursuant to CPLR 2001, so long as the opposing party suffers no prejudice. Here, the defendants submitted a signed and notarized affirmation of Bell with their reply papers wherein he affirmed, inter alia, that the statements set forth in the initial declaration were true and correct. Since any defect with regard to the declaration's form was cured by the affirmation submitted by the defendants in reply, and the plaintiff suffered no prejudice, the Supreme Court improvidently exercised its discretion in declining to consider the declaration (Kallo, 2025 NY App. Div. LEXIS 4633 at **3-4) (emphasis added and internal citations omitted).
The Court finds that the Appellate Division, Second Department's ruling in Kallo is precisely on point and reflects a change in the law that would change the Court's prior determination in the July 2025 Orders had Kallo been published prior to such rulings. Indeed, as in Kallo, defendant submitted with its reply papers the Corrected Affirmations that rectify the procedural defect in the moving affirmations by expressly setting forth CPLR 2106's requisite language (see NYSCEF Doc. Nos. 163-167). Moreover, because the five Corrected Affirmations are substantively identical to the five moving affirmations (see NYSCEF Doc. Nos. 128-132), plaintiff suffers no prejudice by the Court's exercise of its discretion to consider the Corrected Affirmations herein (see Kallo, 2025 [*7]NY App. Div. LEXIS 4633 at **3-4; see also CPLR 2001).[FN3]

Indeed, this ruling is consistent with New York law that generally allows for the curing of procedural deficiencies in reply papers where, as here, the non-movant suffers no prejudice due to same (see, e.g., Rodriguez v Tri-Borough Certified Home Care, Ltd., 227 AD3d 557, 557 [1st Dept 2024] (noting that "[a]lthough the initial affidavit was not properly notarized, a notarized, substantively identical affidavit was submitted alongside plaintiff's reply, which did not prejudice defendants"); Matter of Mirzakandov v Mazal U Bracha, LLC, 216 AD3d 966, 967 [2d Dept 2023] (stating that "[a] court may therefore consider materials submitted in reply that serve to correct procedural, technical, and/or ministerial defects in a party's moving papers by exercising its discretion pursuant to CPLR 2001, so long as the opposing party suffers no prejudice"); Bacon & Seiler Constructors, Inc. v Solvay Iron Works, Inc., 185 AD3d 1390, 1391-1392 [4th Dept 2020] (holding that "[c]ontrary to plaintiff's further contention, the court did not abuse its discretion in allowing defendants to correct an error in Sheila Maestri's declaration. While the declaration initially submitted by defendants in support of the motion was defective because the declaration was not in affidavit form, defendants corrected that technical defect by submitting the identical evidence in proper form in their reply papers") [internal citation omitted]; Matos v Schwartz, 104 AD3d 650, 653 [2d Dept 2013] (finding that "while the expert affirmation initially submitted by Martin was defective in form because the expert was not a physician licensed in New York, he corrected this technical defect in reply by submitting the identical evidence in proper form. Under these circumstances, the original defect in form does not require denial of Martin's motion") [internal citation omitted]).
Accordingly, for the reasons stated above, the branch of defendant's motion seeking leave to renew the July 2025 Orders is granted pursuant to CPLR 2221(e) (see U.S. Bank N.A. v Mongru, 2025 NY App. Div. LEXIS 4825 at *8 [finding that "the Supreme Court should have granted G & Q Estates's motion for leave to renew"]; U.S. Bank Trust, N.A. v Deceus, 186 AD3d 1450, 1451 [2d Dept 2020] (holding that "the Supreme Court properly granted leave to renew on the ground that there had been a change in the law"); Morato-Rodriguez v Riva Constr. Group, Inc., 147 AD3d 656, 656 [1st Dept 2017] (stating that "[t]he motion court properly granted Broadway's motion to renew, since this Court's prior order 'constituted a change in the law'"); David v Persaud, 135 AD3d 530, 530 [1st Dept 2016] (holding that "[r]enewal of defendants' motion and cross motion for summary judgment was also proper, since dismissal of the complaint as against Dr. Cerbone constituted a change in the law"); Higgins v Consolidated Edison Co. of NY, Inc., 93 AD3d 443, 443 [1st Dept 2012] (finding that "[t]he motion court properly granted the motion to renew in light of the Court of Appeals' decision in Runner v New York Stock Exch., Inc.")).[FN4]

[*8]Motion for Summary Judgment
The legal standards to be applied in evaluating a motion for summary judgment pursuant to CPLR 3212 are well-settled. "Summary judgment is a drastic remedy, to be granted only where the moving party has 'tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact' and then only if, upon the moving party's meeting of this [prima facie] burden, the non-moving party fails 'to establish the existence of material issues of fact which require a trial of the action'" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). "On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (Vega, 18 NY3d at 503, quoting Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 339 [2011]). "[S]ummary judgment is appropriate 'where only one conclusion may be drawn from the established facts'" (Jones v St. Rita's R.C. Church, 187 AD3d 727, 729 [2d Dept 2020], quoting Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]), or where a cause of action and/or the type of damages sought "fails as a matter of law" (Ramos v Howard Indus., Inc., 10 NY3d 218, 224 [2008]; see also M.V.B. Collision, Inc. v Allstate Ins. Co., 187 AD3d 881, 882 [2d Dept 2020]).
The EDTPA was enacted on April 3, 2020 in response to the COVID-19 pandemic, and it was retroactively applied to March 7, 2020 (see NY Public Health Law Article 30-D, §§ 3080-3082). The stated purpose of the statute was to "broadly protect[] the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency" (see NY Public Health Law § 3080). The EDTPA confers broad immunity upon providers who rendered "health care services" during the COVID-19 pandemic. Specifically, Section 3082(1) of the EDTPA provides:
[A]ny health care facility or health care professional shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services, if:
(a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;
(b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and
(c) the health care facility or health care professional is arranging for or providing health care services in good faith.
Additionally, Section 3081(5) defines "health care services" as the following:
[S]ervices provided by a health care facility or a health care professional, regardless of the location where those services are provided, that relate to:
(a) the diagnosis, prevention, or treatment of COVID-19;
(b) the assessment or care of an individual with a confirmed or suspected case of COVID-19; or
(c) the care of any other individual who presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration.
Accordingly, the EDTPA applies where: (1) the defendant is a "health care professional" or "facility"; (2) the defendant was arranging for or providing "health care services"; (3) the services were provided in accordance with law or a COVID-19 emergency rule; (4) the services were impacted by the defendant's response to COVID-19; and (5) the services were rendered in good faith and did not amount to gross negligence or recklessness.[FN5]

Having reviewed the parties' submissions, the Court determines that defendant has established, prima facie, that all five of these criteria have been met, reflecting defendant's entitlement to summary judgment dismissing plaintiff's first, third through sixth, eighth and ninth causes of action [FN6]
pursuant to CPLR 3212 in connection with the EDTPA. 
First, the EDTPA defines "health care facility" to include "a hospital, nursing home or other facility licensed or authorized to provide health care services" (see Public Health Law § 3081[3]). Given that plaintiff repeatedly acknowledges in the Complaint that defendant owns and operates a nursing home facility in Tarrytown, the defendant nursing home is clearly a "health care facility" as contemplated by the EDTPA (see NYSCEF Doc. No. 1 at ¶¶ 8, 11, 21, 24, 33). 
Second, because the EDTPA broadly applies to "arranging for" or providing services that "relate to", inter alia, "the diagnosis, prevention, or treatment of COVID-19" (see Public Health Law § 3081[5]), defendant in its operation of the nursing home and its conduct in seeking to prevent and treat COVID-19 was arranging for or providing "health care services" in connection with the EDTPA (see NYSCEF Doc. No. 1 at ¶¶ 1-189; NYSCEF Doc. Nos. 154, 163-167).
With respect to the related third and fourth factors, both plaintiff's allegations in his Complaint and defendant's submissions on this motion demonstrate that defendant was providing services to patients, including the decedent, in accordance with law as a licensed nursing home, and that such services were impacted by defendant's response to the COVID-19 pandemic (see NYSCEF Doc. No. 1 at ¶¶ 1-189; NYSCEF Doc. Nos. 118, 120-137, 154, 163-167). 
Specifically, in the Corrected Affirmations, defendant has furnished affirmations based upon the personal knowledge of inter alia: (1) Kaplewicz as the Corporate Director of Clinical Services of non-party Personal Healthcare, which provides management and consulting services for various nursing homes, including defendant; (2) Mazzetti as defendant's Director of Nursing during the operative timeframe of March to April of 2020; (3) Biondo as defendant's current Director of Nursing, who was a social worker for defendant in the Spring of 2020; and (4) Eisikowitz as defendant's Administrator during the operative timeframe of March to April of 2020 (see NYSCEF Doc. Nos. 163-164, 166-167). The Corrected Affirmations collectively set forth detailed averments regarding defendant's services to patients, including the decedent, during the COVID-19 pandemic in March and April of 2020, and explain how defendant's services were impacted by its response to [*9]the pandemic in the Spring of 2020 (id.). Such information includes, inter alia, defendant's diligent and extensive efforts to stay abreast of the rapidly developing news concerning COVID-19 and the guidance issued for addressing the pandemic, including guidance from the Centers for Disease Control, Centers for Medicare and Medicaid Services, and the New York Department of Health (id.). It also includes details regarding the specific policies and procedures that were implemented by defendant in response to the pandemic, which were largely based upon such guidance (id.).
Defendant has also furnished documentary evidence and deposition testimony reflecting the services and treatment that it provided to the decedent during her residency from March 14, 2020 until April 25, 2020, which timeframe is entirely covered by the EDTPA's immunity period that commenced on March 7, 2020 (see NYSCEF Doc. Nos. 120-137, 153-172). In particular, defendant's submissions demonstrate that the decedent had serious pre-existing medical conditions at the time of her admission, including cancer, diabetes, and chronic kidney disease, and that because she was deemed high risk for serious complications if she were to be infected with COVID-19, the decedent was placed on contact precautions and droplet precautions as per defendant's policies (id.). Defendant has also furnished documentary evidence and deposition testimony reflecting the treatment that the decedent received once she became infected with COVID-19, including being prescribed Zinc Sulfate, Zithromax and Hydroxychloroquine, and that the decedent was given oxygen and an IV to maintain her fluid levels, and had her vital signs constantly monitored, prior to the decedent's transfer to Phelps Memorial Hospital on April 25, 2020 when her health had rapidly deteriorated (id.).
Based upon the foregoing, defendant has established, prima facie, that it treated the decedent in accordance with its COVID-19 protocols, and that the pandemic and defendant's related responsive policies directly impacted her treatment (see Est. of Pierro v Carmel Richmond Healthcare & Rehab. Ctr., 2025 NY App. Div. LEXIS 4681, **4-5 [2d Dept Aug. 13, 2025] (holding that "the Supreme Court should have granted the defendant's motion to dismiss the complaint insofar as asserted against it on the ground of immunity under the EDTPA" where "[t]he defendant's submissions . . . conclusively established that the defendant was providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law; the alleged act or omission occurred in the course of providing health care services, and the treatment of the decedent was impacted by the defendant's decisions or activities in response to, or as a result of, the COVID-19 outbreak and in support of the state's directives; and the defendant was providing health care services in good faith"); Martinez v NYC Health & Hosps. Corp., 223 AD3d 731, 732 [2d Dept 2024] (noting that "the plaintiff alleges that the decedent was diagnosed with COVID-19 after arriving at Elmhurst Hospital on March 30, 2020, and that he died from COVID-19 on April 9, 2020" and holding that "[t]he defendants' submissions, including the complaint and the transcript of the plaintiff's hearing pursuant to General Municipal Law § 50-h, conclusively established that the defendants were entitled to immunity under the EDTPA"); Mera v New York City Health & Hosps. Corp., 220 AD3d 668, 670 [2d Dept 2023] (stating that "the plaintiff alleged that the decedent was diagnosed with COVID-19 after arriving at the defendant Elmhurst Hospital Center (hereinafter the hospital) on March 27, 2020, that she was treated for COVID-19 while admitted in the hospital, and that she died from COVID-19 on April 5, 2020" and finding that "[t]he affirmation of the attending physician who treated the decedent at the hospital, submitted by the defendants in support of the motion, established that the defendants were entitled to immunity under the EDTPA"); Cf. Holder v Jacob, 231 AD3d 78, 88 [1st Dept 2024] (affirming the Supreme Court's denial of a CPLR 3211 motion to dismiss based upon EDTPA immunity where "[t]he proof [*10]submitted in support of defendants' motion" did not "conclusively establish the impact on the treatment rendered to plaintiff," and noting that "suggestion is not conclusiveness")).
Fifth and finally, the Complaint does not include any allegation that defendant failed to render its services in good faith (see NYSCEF Doc. No. 1 at ¶¶ 1-189), reflecting plaintiff's tacit admission that defendant rendered its services to the decedent in good faith. Moreover, defendant has furnished an affirmation from Mazzetti in which she avers that she "and the staff worked tirelessly to maintain a safe and healthy facility in good faith and as best we reasonably could under the heavily demanding and changing conditions" (see NYSCEF Doc. No. 164 at ¶ 14). Defendant has also set forth an affirmation from its Administrator, Eisikowitz, who similarly avers that defendant "and its staff made a concerted, good-faith effort to follow applicable guidelines as best we reasonably could under such difficult circumstances" (see NYSCEF Doc. No. 167 at ¶ 9). As such, the record on this motion unambiguously reflects that defendant rendered its services to the decedent in good faith, as is required for EDTPA immunity.
In response to defendant's prima facie showing of entitlement to summary judgment dismissing the first, third through sixth, eighth and ninth causes of action based upon EDTPA immunity, plaintiff in his opposition has failed to cite a triable issue of fact that would warrant the denial of summary judgment. Plaintiff's opposition is solely comprised of an attorney affirmation that is not based upon counsel's personal knowledge, the majority of which affirmation addresses defendant's initial non-compliance with CPLR 2106 (see NYSCEF Doc. No. 142). In fact, counsel dedicates a mere three paragraphs to attempting to cite a triable issue of fact that would require the denial of summary judgment (id. at ¶¶ 42-44), and annexes only two documents to his affirmation, namely, the decedent's death certificate and Kaplewicz's deposition transcript (see NYSCEF Doc. Nos. 143-144).
The Court agrees with defendant that plaintiff's citation to Kaplewicz having answered certain deposition questions with "I don't recall" and "I don't remember" provides no basis for the denial of summary judgment regarding the first, third through sixth, eighth and ninth causes of action. This is particularly true where, as here, Kaplewicz has furnished an affirmation based upon her personal knowledge in which she avers in detail as to defendant's implementation of policies and procedures responsive to the COVID-19 pandemic in the Spring of 2020, and annexes to her affirmation over 100 pages of documentary evidence reflecting same (see NYSCEF Doc. No. 163). Indeed, as noted above, Kaplewicz's affirmation is one of five Corrected Affirmations furnished by defendant that collectively establish its prima facie entitlement to summary judgment dismissing plaintiff's first, third through sixth, eighth and ninth causes of action (see NYSCEF Doc. Nos. 163-167). Simply put, Kaplewicz's failure to remember certain specific details at her deposition in no way reflects the presence of triable issues of fact, and nor does it undermine defendant's entitlement to summary judgment in any manner. 
Accordingly, defendant's motion for summary judgment dismissing plaintiff's first, third through sixth, eighth and ninth causes of action based upon the EDTPA is granted (see Est. of Pierro, 2025 NY App. Div. LEXIS 4681 at *4 [holding that "the Supreme Court should have granted the defendant's motion to dismiss the complaint insofar as asserted against it on the ground of immunity under the EDTPA"]; Hyman v Richmond Univ. Med. Ctr., 239 AD3d 617, 618 [2d Dept 2025] (finding that "the defendant's evidentiary submissions established conclusively that the three requirements for immunity under the EDTPA were met with respect to the alleged malpractice, and, therefore, the plaintiff had no cause of action against it"); Lara v S & J Operational, LLC, 237 AD3d 1186, 1188 [2d Dept 2025] (holding that "the Supreme Court should have granted the defendant's [*11]motion to dismiss the complaint on the ground of immunity" pursuant to the EDTPA); Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475, 478 [1st Dept 2024] (stating that "[a]s to the application of the EDTPA, defendant was entitled to immunity under that statute")).[FN7]

With respect to the EDTPA's exception for gross negligence (see Public Health Law § 3082[2]) that underlies the seventh cause of action, the Court credits defendant's contention that it has established prima facie entitlement to summary judgment dismissing the seventh cause of action pursuant to CPLR 3212. As noted by defendant, the Complaint in the matter captioned Whitehead v Pine Haven Nursing and Rehabilitation Center (Columbia Cty. Sup. Ct. Index. No. E012022017995), in which the plaintiff was represented by plaintiff's counsel herein, included a gross negligence claim that is not only substantively identical to the seventh cause of action herein, but is nearly a word-for-word copy thereof (Cf. NYSCEF Doc. No. 1 at ¶¶ 271-279, NYSCEF Doc. No. 123 at ¶¶ 302-310). In affirming the Supreme Court's dismissal of this cause of action pursuant to CPLR 3211, the Appellate Division, Third Department held that the gross negligence claim "consists of nothing more than bare legal conclusions with no factual specificity, which do not suffice to withstand a motion to dismiss" (see Whitehead v Pine Haven Operating LLC, 222 AD3d 104, 110-111 [3d Dept 2023]). In light of the Court's ruling in Whitehead, and given defendant's submissions demonstrating that it did not act with gross negligence in its treatment and care of the decedent (see NYSCEF Doc. Nos. 118, 120-137, 154, 163-167), defendant has established prima facie entitlement to summary judgment dismissing the seventh cause of action pursuant to CPLR 3212. 
Furthermore, because plaintiff's opposition wholly fails to substantively address the gross negligence claim, he has not cited any triable issue of fact concerning defendant's alleged gross negligence, and has tacitly conceded the dismissal of the seventh cause of action as a matter of law (see NYSCEF Doc. Nos. 142-144). Therefore, the branch of defendant's motion for summary judgment dismissing the seventh cause of action is granted pursuant to CPLR 3212.
Finally, to the extent that plaintiff's second cause of action purports to allege that defendant should somehow be held liable "for negligence pre-COVID pandemic," the Court agrees with defendant that it has established prima facie entitlement to summary judgment dismissing that claim (see NYSCEF Doc. No. 1 at ¶¶ 207-222). As noted above, the record on this motion is clear — and plaintiff concedes, as he must — that the decedent was first admitted to defendant nursing home on March 14, 2020 after the onset of the COVID-19 pandemic and following the March 7, 2020 inception of the EDTPA's timeframe for immunity (see NYSCEF Doc. No. 1 at ¶ 183). The Court is not aware of any authority that would warrant holding defendant liable to plaintiff for conduct that occurred prior to the decedent's admission on March 14, 2020, as defendant did not owe any legal duty to the decedent or plaintiff at that time (see generally Odell v 704 Broadway Condo., 284 AD2d 52, 59 [1st Dept 2001] (noting that "the board owed no duty to plaintiff before his purchase of the condominium unit" and that it first "owe[d] plaintiff a fiduciary duty after he bought the unit"); Morris v Troy Sav. Bank, 32 AD2d 237, 238 [3d Dept 1969] (stating that "[t]he fundamental basis of liability for actionable negligence is the reasonable foreseeability of the risk" and noting that [*12]"reasonable foresight is required but not prophetic vision")). 
As plaintiff's opposition neglects to even reference the second cause of action, there exists no triable issue of fact regarding defendant's alleged pre-pandemic negligence, and plaintiff has tacitly conceded the second cause of action's dismissal as a matter of law (see NYSCEF Doc. Nos. 142-144). Accordingly, the branch of defendant's motion for summary judgment dismissing the second cause of action is granted pursuant to CPLR 3212.
Therefore, for the reasons stated above, defendant's motion for summary judgment dismissing the Complaint pursuant to CPLR 3212 is granted in its entirety (see Est. of Pierro, 2025 NY App. Div. LEXIS 4681 at *4; Hyman, 239 AD3d at 618; Lara, 237 AD3d at 1188; Hasan, 224 AD3d at 478; Whitehead, 222 AD3d at 109).
Accordingly, it is,
ORDERED that defendant's motion for leave to renew and/or reargue the July 2025 Orders (seq. no. 5) is granted to the extent that defendant is granted leave to renew its summary judgment motion pursuant to CPLR 2221(e); and it is further,
ORDERED that upon renewal, defendant's motion for summary judgment dismissing the Complaint as a matter of law (seq. no. 4) is granted in its entirety pursuant to CPLR 3212.
The foregoing constitutes the Decision and Order of this Court.[FN8]

Dated: September 24, 2025
White Plains, New York
ENTER,
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:Motion sequence number one was defendant's prior motion to dismiss this action pursuant to CPLR 3211(a)(7), which motion was withdrawn (see NYSCEF Doc. Nos. 6-14).

Footnote 2:Motion sequence number three was plaintiff's unopposed motion for pro hac vice admission of counsel, which was granted by Decision and Order dated October 29, 2024 (see NYSCEF Doc. Nos. 99-104).

Footnote 3:Because the August 2025 Kallo decision reflects a change in the law that would change the Court's prior determination in the July 2025 Orders had Kallo been published prior to such rulings, the Court need not address plaintiff's contention that defendant has offered no reasonable justification for its failure to comply with CPLR 2106 when it moved for summary judgment in April 2025.

Footnote 4:In light of the Court's granting leave to renew the July 2025 Orders pursuant to CPLR 2221(e), it need not reach defendant's alternative argument seeking leave to reargue the July 2025 Orders pursuant to CPLR 2221(d).

Footnote 5:As discussed below in connection with the seventh cause of action, the only exception under the EDTPA is for injuries caused by "willful or intentional misconduct, gross negligence, reckless misconduct, or intentional infliction of harm" (see Public Health Law § 3082[2]).

Footnote 6:The second cause of action for pre-pandemic negligence and the seventh cause of action for gross negligence are addressed infra.

Footnote 7:In light of the Court's dismissal of these claims pursuant to the EDTPA, the Court need not address defendant's alternative argument that it is also immune from liability under the Federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (the "PREP Act").

Footnote 8:All other arguments raised on this motion and all materials submitted by the parties in connection therewith have been considered by this Court, notwithstanding the specific absence of reference thereto.